[Filed February 25, 1885.]

## BENNETT v. NORTHERN PACIFIC EXPRESS CO.

EXPRESS COMPANY — MODIFICATION OF CONTRACT A QUESTION FOR THE JURY. — A package of money was delivered to the Northern Pacific Express Co. for transportation, addressed to the "Northern Pacific Express Company, Ainsworth, W. T."  Subsequently the address was changed by inserting the word "agent" before the word "northern."  The money was lost, and in an action therefor, *held*, that whether such change resulted from a modification of the contract of carriage was a question for the jury.

ID. — CARRIER AND CONSIGNEE — DELIVERY TO CONSIGNEE. — An express company cannot be at the same time both consignee and carrier.  Nor is such a company relieved of its liability as a carrier until it has made a personal delivery or tender of the article conveyed to the consignee, if he can be found.

ID. — DELIVERY TO AGENT OF CARRIER. — Where goods are consigned to an owner in care of an agent of the carrier, it seems that delivery to the agent will exonerate the carrier.  But such rule stands upon the ground of a tacit understanding between the parties.

FREIGHT RECEIPT — CONDITION — WAIVER. — A condition in an express receipt that the company shall in no case be liable for loss or damage unless the claim thereof shall be presented in writing within ninety days after date of receipt, is waived by the company in not exacting a compliance therewith.

PRACTICE — NONSUIT — WAIVER OF ERROR. — Where a plaintiff has not proved a cause sufficient to be submitted to a jury, yet the defendant after a motion for a nonsuit was made and overruled went into his defense, and supplied the plaintiff's defective evidence, the appellate court will not review the ruling on the motion.

XII. OREG. — 4.

EVIDENCE—ADMISSION.—A printed notice signed by the superintendent of the company, offering a reward for the recovery of the goods, and which had been posted in conspicuous places, is competent evidence as an admission of liability on the part of the company.

ID.—PROOF OF AGENCY.—It is not error in such a case to permit the agent who received the money to testify as to what capacity and for whom he was acting in the receipt of the money in question.

MULTNOMAH COUNTY.    Defendant appeals.    Affirmed.

The facts are stated in the opinion.

*Rufus Mallory,* and *James McNaught,* for Appellant.

It was error to admit in evidence the printed advertisement offering a reward for the arrest and conviction of the perpetrators of the theft. Said paper writing was written, signed, and circulated after said suit had been commenced by said Bennett against said express company to recover said money. Said paper writing was not competent evidence, for the reasons, first, Mr. Footner was not authorized to make admissions. Admissions made after the occurrence by an agent are not evidence against the corporation. (*Furst* v. *Second Ave. R. R. Co.* 72 N. Y. 542; *Chicago & N. W. R. R. Co.* v. *Fillmore,* 57 Ill. 265; *Penn. R. R. Co.* v. *Books,* 57 Pa. 339; *Meyer* v. *Virginia & Truckee R. R. Co.* 9 Am. & Eng. R. R. Cas. 178.) The circular was admitted for the purpose of proving the continuing liability of the express company as a common carrier of the money after its delivery at Ainsworth. The contract of shipment determines that question. (Lawson on Contracts of Carriers, § 133.) The testimony of Johnson as to the capacity in which he was acting in the receipt of the money in question was incompetent. It is the opinion of the witness in a matter where such an opinion is inadmissible. (*Providence Tool Co.* v. *U. S. Manuf. Co.* 120 Mass. 35; *Short Mountain Coal Co.* v. *Hardy,* 114 Mass. 197; Abbott Trial Ev. p. 43, § 47.) The court should have allowed appellant's motion for a nonsuit. The shipping receipt is the contract. The express company is the consignee named therein. The delivery of the money

at Ainsworth to the company's agent is all the company, by the said contract, undertook to do. And this it did. If liable at all for the money thereafter, it must have been as bailee. (*May* v. *Babcock*, 4 Ohio, 339; *Cincinnati, Hamilton & Dayton M. R. R. Co.* v. *Pontius*, 19 Ohio St. 236, 237; *Long* v. *N. Y. Cent. R. R. Co.* 50 N. Y. 76, 77; *Collender* v. *Dinsmore*, 55 N. Y. 200; *Kirkland* v. *Dinsmore*, 62 N. Y. 175; *Christenson* v. *Am. Ex. Co.* 15 Minn. 270; *Steele* v. *Townsend*, 37 Ala. 247; *Mulligan* v. *Ill. Cent. R. R. Co.* 36 Iowa, 181. See *Robinson* v. *Merchants' Dis. T. Co.* 45 Iowa, 470; *McMillan* v. *Michigan Southern & Northern Indiana R. R. Co.* 16 Mich. 80.) The bill of lading is conclusive evidence of the contract, and its acceptance is sufficient evidence of assent to its terms. (Lawson on Carriers, §§ 102, 112; *Cincinnati H. & D. M. R. R. Co.* v. *Pontius*, 19 Ohio St. 221; *White* v. *Van Kirk*, 25 Barb. 16; *Tyler* v. *Little Rock R. R. Co.* 32 Ark. 393; *The Emily* v. *Carney*, 5 Kan. 645; *Grace* v. *Adams*, 100 Mass. 505.) The express company itself is consignee named in the contract. The authorities all agree that a delivery to the consignee of the consignment releases the common carrier from liability as such. (Lawson on Usages and Customs, § 224; *Hoadley* v. *Northern Transportation Co.* 115 Mass. 304; Lawson on Contracts of Carriers, § 113; *Bank of Kentucky* v. *Adams' Express Co.* 93 U. S. 174; *York Co.* v. *Central R. R.* 3 Wall. 107; Hutchings on Carriers, §§ 239, 240; *Mobile & Girard R. R. Co.* v. *Prewitt*, 46 Ala. 63.) Such a contract is to be construed like all other written contracts according to the legal import of its terms, and it may not be varied by parol evidence. (See Lawson on Contracts of Carriers, § 113; *The Indianapolis & C. R. R. Co.* v. *Remmy*, 13 Ind. 518; *Oppenheimer* v. *United States Express Co.* 69 Ill. 62; *Pemberton* v. *N. Y. Cent. R. R.* 104 Mass. 144; *Southern Pacific Express Co.* v. *Dickson*, 94 U. S. 549; *Cox* v. *Peterson*, 30 Ala. 608.) Bennett failed to aver or prove that he had presented the shipping contract with the demand of payment, and this was a condition precedent to the right of recovery. (*Southern*

*Express Co.* v. *Hunnicutt*, 54 Miss. 566; S. C. 28 Am. Rep. 385; *United States Express Co.* v. *Harris*, 51 Ind. 127; *United States Express Co.* v. *Caldwell*, 21 Wall. 264; *Adams' Express Co.* v. *Darnell*, 3 Am. Corp. Cas. 289.) If Bennett was the consignee it was his duty to be at Ainsworth, or have there an agent to whom delivery could be made on the 29th and 30th of January. His failure to have there such person on said days relieves the express company from the stringent rule applicable to common carrier; and if so relieved, the motion for nonsuit should have been sustained. (Hutchinson on Carriers, §§ 385, 386; *Pelton* v. *Rensselaer & S. R. R. Co.* 54 N. Y. 214; *Fenner* v. *Buffalo etc. R. R. Co.* 44 N. Y. 511; *Norway Plains Co.* v. *Boston & M. R. R. Co.* 1 Gray, 263; *Sessions* v. *Western R. R. Co.* 16 Gray, 132; *Rice* v. *Boston & W. R. R. Co.* 98 Mass. 212; *Hinckley* v. *New York Central R. R. Co.* 56 N. Y. 429; *Thomas* v. *Boston & Prov. R. R. Co.* 10 Met. 472.)

*George H. Williams*, for Respondent.

The advertisement of a reward signed by the general superintendent of the appellant was competent as an admission of the company that they knew Bennett was the owner of the money, and as an admission tending to show that the money was lost by the company while it was in their possession as a common carrier. This paper, under the testimony of Mr. Footner, is an act of the corporation, as well as an admission. (Angell & Ames Corp. § 306; *First Baptist Church* v. *Brooklyn F. Ins. Co.* 18 Barb. 69.) It was the duty of the company to notify Bennett or his agent of the arrival of the package at Ainsworth, or to use reasonable diligence in attempting to give such notice. After giving the notice the company was liable as a carrier until a reasonable time had elapsed for Bennett or his agent to call for the package. (*Zinn* v. *New Jersey Steamboat Co.* 49 N. Y. 442; *Smith* v. *Nashua & L. R. R. Co.* 27 N. H. 86; *Price* v. *Powell*, 3 N. Y. 322; *McKinney* v. *Jewett*, 90 N. Y. 270; *Gleadell* v. *Thomson*, 56 N. Y. 197.) Whether

the defendant did use proper and reasonable diligence to find the consignee was properly submitted to the jury. (*Witbeck* v. *Holland, supra; West Chester & Philadelphia R. R. Co.* v. *McElwee,* 67 Pa. St. 311; *Hill* v. *Humphreys,* 5 Watts & S. 123.) The court will not enforce unreasonable provisions, which may be inserted in the receipts given by the carrier to the shipper. (*Southern Express Company* v. *Caperton,* 44 Ala. 101; *Railroad Company* v. *Lockwood,* 17 Wall. 382, 384.) It is immaterial whether the package was addressed "Northern Pacific Express Company," or "Agent Northern Pacific Express Company," if, in fact, the money was shipped upon the responsibility of the company and not upon the responsibility of the person acting as agent; and as to whether the money was shipped upon the responsibility of the company or of the individual acting for the company at Ainsworth was a question of fact for the jury. (Angell & Ames Corp. § 295; *Stanton* v. *Camp,* 4 Barb. 274; *Boston & M. R. R.* v. *Whitcher,* 1 Allen, 497; *Whitney* v. *Wyman,* 101 U. S. 392.) Ladd & Tilton were special agents of the respondent, having no authority except to ship the money to the "N. P. Express Co." If the appellants knew the extent of such agency, then the change of the address on the package by adding the word "agent" would not affect the rights of the respondent. (*Delafield* v. *State of Illinois,* 26 Wend. 220.) The gist of the action is negligence, and if the proof shows that defendant was guilty of gross negligence while in charge of the money, it cannot excuse itself by saying that it was a bailee and not a common carrier. (*Conaughty* v. *Nichols,* 42 N. Y. 83; *Blossom* v. *Griffin,* 13 N. Y. 569; Code, §§ 62, 65, 83, 94, 95.)

THAYER, J. — It is alleged in the complaint in this action that the appellant was a corporation, organized by the laws of the State of Minnesota, having agents at the city of Portland, in the State of Oregon, and at the town of Ainsworth, Washington Territory, and at other points in said State and Territory; that on and prior to the 28th day of January, 1884, said appellant was a common carrier for hire, engaged in the express business

between said city of Portland and said town of Ainsworth, and other points in said State and Territory; that on said 28th day of January, 1884, Ladd & Tilton, bankers in said city of Portland, delivered to appellant, as such common carrier, a package properly secured for transportation, containing currency amounting to $18,784.27, addressed to appellant, by a written indorsement upon said package as follows, "Northern Pacific Express Co., Ainsworth, W. T."; that said money at said time was the property of the respondent; that appellant received the said package from said Ladd & Tilton, as such·common carrier, to be by it transported for respondent from the city of Portland to the town of Ainsworth in consideration of a reasonable consideration to be paid therefor; that at the time it received said money it was notified by said Ladd & Tilton, and knew that the money was the property of the respondent, and was to be transported for him and to be delivered to him or his order at said town of Ainsworth upon his demand; that on the 31st day of January, 1884, respondent demanded said money of the appellant at its office at said town of Ainsworth, but a delivery was refused; and that appellant, as such common carrier, conducted itself so negligently, carelessly, and fraudulently as to the said package of money that it became wholly lost to the respondent; and it is further alleged in said complaint that on the 16th day of February, 1884, said respondent presented to the appellant, at its office in the city of Portland, a written claim and demand for said money, but that appellant refused to deliver or pay respondent the same, or any part of it.

The appellant, by its answer, denied that on the 28th day of January, 1884, it had an office at the city of Portland, or at the town of Ainsworth; denied that it had any knowledge or information sufficient to form a belief that said money was the property of the respondent, or that it received said money to be transported for respondent, or that he was to pay any compensation for the transportation thereof, or that it did transport it for him; denied that it was notified by Ladd & Tilton when it received the money, or ever knew that the money, or any part thereof, was the property of respondent, or was to be transported

for him, or to be delivered to him, or to his order, at any place; denied that respondent demanded said money of appellant, at its office in said town of Ainsworth, at any time, or that it neglected or refused to deliver it; denied that it knew that said package contained said sum of money, or as such common carrier conducted itself negligently, carelessly, or fraudulently as to the same, so that it became lost to respondent, or that, as a common carrier, it conducted itself negligently, etc., as to the transportation of said money, or that respondent lost it by reason of any negligence, carelessness, or fraud of said appellant; and denied that respondent had been damaged by reason of its carelessness etc.; and for a further defense set up the following affirmative matter, viz.:—

"That it is a corporation duly incorporated under the laws of the State of Minnesota, and that its business and powers are stated in its articles of incorporation, and that, under its articles of incorporation, it is authorized to receive money for transportation from the consignor, and transport it over its routes, and deliver it to its consignee, and to collect reasonable charges for transporting the same.

"That under its articles of incorporation it has adopted rules and regulations for the government of its agents in the conduct of its business; that said rules and regulations direct its agents to require of consignors, before the delivery of the money, that the consignor cause the same to be properly and securely tied, sealed, and fastened, and the amount of the money contained therein indorsed on the outside of the package, and the package addressed to the consignee, with the place where the same is to be delivered plainly marked thereon. And said rules and regulations further direct the said agents to deliver the said package to the consignee named and indorsed thereon; that said rules and regulations are the usual and customary rules and regulations adopted by all express companies engaged in business like said defendant; and that on the 28th day of January, 1884, said Ladd & Tilton, bankers mentioned in said plaintiff's complaint, and said plaintiff, had full knowledge of said rules and regulations, and usage and custom.

·  "That under said articles of incorporation said defendant could not act as, and be the consignee of money it was transporting for others.

"That said agents, under said rules and regulations, and said usage and custom, had no authority to receive said package of money consigned to the defendant for transportation.

"That on said 28th day of January, A. D. 1884, the said Ladd & Tilton delivered to the defendant's special agents at Portland the said sum of $18,784.27, secured and consigned as stated in plaintiff's complaint, and the said special agents of the defendant then and there, acting on behalf of said defendant, entered into a contract with said Ladd & Tilton to receive the said package from the said Ladd & Tilton so consigned, and transport the same to said town of Ainsworth. And that in said contract the said Ladd & Tilton and the said defendant further agreed that the said defendant should be liable for said money as a forwarder only. That said contract, in so far as it related to the receiving of said package consigned to the Northern Pacific Express Company, was void. And that said defendant thereafter, on said 28th day of January, A. D. 1884, and· while said package was still in the city of Portland, and before the delivery thereof to the express messenger, and while said contract was entirely executory, mutually agreed with said Ladd & Tilton to and did modify said contract so as to consign said package of money and said money to E. E. Johnson. That said E. E. Johnson in said contract was named and called ' Agent Northern Pacific Express Company.' That said E. E. Johnson was, on the 28th and 29th days of January, A. D. 1884, the agent of plaintiff and acting for and on behalf of plaintiff, and authorized by plaintiff to receive said package of money.

"That under said contract as modified, the said defendant, within a reasonable time after the delivery to it of said package, forwarded the same to the said town of Ainsworth, and on the 29th day of January, A. D. 1884, at the said town of Ainsworth, delivered the said package of money and the said $18,784.28 to the said consignee, E. E. Johnson; and· the said E. E. Johnson then and there received said package of money,

opened the said package and counted said money, and then and there, as such consigneee, gave the said defendant the usual and customary receipt for said money. And the said defendant's connection with and liability for said money on said delivery to said consignee then and there terminated."

The respondent, in reply to the new matter set forth in the answer, denied the allegations thereof that were at variance with those set out in the complaint, and all the matters in the said answer which were in avoidance of his alleged cause of action. The issues were tried by the said Circuit Court, and a jury duly impaneled, and the said jury returned a verdict in favor of the respondent and against the appellant for the amount of said money, and the interest thereon from the time the respondent claimed it should have been delivered, from which judgment the appeal herein was taken.

The appellant's counsel insist that the said judgment should be reversed, upon the grounds:—

*First,* that the allegations and proofs show that it performed its contract and duty in regard to the said package of money; and *second,* that the Circuit Court committed error in its rulings on the admission of evidence, and in its instructions to the jury.

It appears from the pleadings and proofs, we think, beyond question, that at the time the money is alleged to have been delivered to the appellant, it was a corporation engaged in the express business between the places alleged in the complaint; that the said package of money was duly delivered to it at Portland for transportation, and that it belonged to the respondent; that the money was never delivered to the respondent. The business relating to the affair had its inception in the sending of drafts by Donnell, Clark & Laribie, bankers at Deer Lodge, Montana Territory, to Ladd & Tilton, at Portland, Oregon. Said drafts were accompanied by a letter of instruction, in the following words:—

"DEER LODGE, M. T., Jan. 24, 1884.

"*Messrs. Ladd & Tilton, Portland, Oregon*—DEAR SIRS: Please find inclosed our No. A. 3,089, G. G. Sanborn, Local

Treas., on 1st Nat. Bank, Portland, for $33,814.27. Please send us your N. Y. exchange for $15,000, the *balance*, $18,814.27, less your charges, please send by *express* in *currency* to *Northern Pacific Express Co., Ainsworth, Washington Territory,* for the credit and use of *Nelson Bennett.*

" We *guaranty signature* of *William Bennett* and *know* that his *power atty.* is *correct* and on file in our county *records.*

"Resp'ly,

"DONNELL, CLARK & LARIBIE.

" P. S.   We attach certified copy power atty."

The drafts were received by Ladd & Tilton, who delivered the said balânce, less charges, to the appellant for transportation, and which constitutes the said package of money, and received from the agent in charge at Portland a receipt therefor, of which the following is the substance:—

"NORTHERN PACIFIC EXPRESS COMPANY.

"*N. P. Express Co.*

"Received of Ladd & Tilton the property hereinafter described, which we undertake to forward to the nearest point of destination reached by this company. . . . . In no event shall this company be liable for any loss or damage, unless the claim thereof shall be presented to them in writing at· this office, within ninety days after this date, in a statement to which this receipt shall be annexed.   The party accepting this receipt hereby agrees to the conditions herein contained: —

| DATE. | DESCRIPTION. | WEIGHT. | VALUE OR AM'T. | ADDRESSED TO. | DESTINA-TION. | RECEIVED BY. |
|---|---|---|---|---|---|---|
| Dec. 31, | 1 Bag. | D. H. | $     5 00 | First Nat. Bank. | Seattle, W. T. | Cooper. |
| Jan. 8, | 1 Sealed Bag. | Coll. | 5,000 00 | J. A. Perkins. | Colfax, W. T. | Rufus Ball. |
| Jan. 28, | 1 Pk'g. | Coll. | 18,784 27 | N. P. Ex. Co., John McGowan. | Ainsworth, W. T. | Ball. |
| Feb. 13, | 1 Bag. | Collect. | 1,000 00 | O. R. & N. Co. | Whites, N. G. | R.R.Cooper. |

It appears also that on the date of the delivery of the package to appellant, Ladd & Tilton sent the following letter concerning the same: —

"JANUARY 28, 1884.

"*Agent Northern Pacific Company, Ainsworth,. W. T.*—DEAR SIR: At the request of Donnell, Clark & Laribie, Deer Lodge, W. T., we send you to-day, by your company's hands, currency, $18,784.27, for account and use of Nelson Bennett.

"Yours, truly,

[Signed.]       "LADD & TILTON."

It also appears from the deposition of one E. E. Johnson, who was at the time, and had been for some months previously, the appellant's local agent at Ainsworth, Washington Territory, that some time between the 21st and 23d of January, 1884, he received from the respondent a letter, either addressed to "E. E. Johnson," "Mr. Johnson," or plain agent, the witness could not state which, of which the following is the substance: —

"Have ordered money sent from Portland; when received, deliver on order of H. D. Sims, when countersigned by T. B. Taylor.

[Signed.]       "NELSON BENNETT."

The witness testified further as follows: —

"After the receipt of that letter I received a package of money from Portland, addressed 'Agent Northern Pacific Express Company, Ainsworth, W. T.' That package contained $18,-784.27. On the receipt of that package of money I opened it and counted it. I receipted for it on the express company's books. After the receipt of that money I put it in the office safe. I put all of it there. After putting it in the safe, I took out a thousand dollars, carried it around in my pocket an hour or two, and then put it back again. I think I received that money on the 28th or 29th of January, 1884; can't tell which certainly; think it was the morning of the 29th. It is hard to tell how long that money remained in the safe. It was gone on the morning of the 31st. It was taken out of the safe on the night of the 30th, or the morning of the 31st of January. I supposed I closed up the safe on the night after the 30th, and the money was in the safe. At the time I opened the safe on the morning of the 31st, the money was not there. When I opened it, it had been stolen. The day after the money was received

I received a letter from Ladd & Tilton. I have not that letter
now. I have made diligent search for that letter. I can't find it.
That letter was received on the morning of the 30th of January."

(Counsel for defendant here exhibited to witness a paper
which the witness said was, and identified as, a copy of the letter
from Ladd & Tilton.)

" When I received the package of money in question it is hard
to tell how many persons were present. They were coming in
and going out all the time. Probably from ten to fifteen or
twenty. While the money was being counted at Ainsworth, at
the time of its receipt, January 29th, and after it was put in the
safe, the attention of several persons was drawn to it, and the
matter was talked about at the office and in town. I put
the money in the same safe which at that time was used by the
agent of the company, and which I suppose has since been used
for the preservation of money and other valuables shipped by
the Northern Pacific Express Company to and from that point.
I think it was 1 or 2 o'clock in the day when I took the thousand
dollars out of the safe, and took it out in town. I put it back in
an hour or two. I exhibited it in two saloons that I know of. I
signed the receipt with my name in full immediately after the
way bill was entered in the receipt book, and probably before
the money had all been counted, as was my usual custom in
signing receipts for packages billed to the Northern Pacific
Express Company. I have an impression that the letters from
Mr. Bennett were addressed to Mr. Johnson, either ' Agent N.
P. Ex. Co.' or 'Agent N. P. R. W. Co.' I know his usual
custom was to address me as Mr. Johnson in speaking to me."

It also appeared in evidence, from the testimony of H. D.
Sims, that in pursuance of instructions received from respond-
ent, in whose employ he was at that time, he called at the
express office at Ainsworth on the 31st day of January, 1884,
for the purpose of getting the money for respondent; that he
asked E. E. Johnson, the agent, if he had any money for Nelson
Bennett, to which the agent replied, " yes, plenty of it." The
agent then excused himself and went out, saying that he would
be back in a minute or two. Witness waited fifteen or twenty

minutes, and went out to hunt him. In the mean time Johnson came back, and witness followed him in and asked him for the package of money a second time. Johnson again excused himself, and went out the second time. Witness waited for him again about twenty minutes, when he went out and saw Johnson on the opposite side of the street talking with some person. He then came in again. In the mean time No. 2 train came in, going west, and Mr. Morrison, the traveling auditor, got off and went into the depot with Johnson. Witness followed them in, and then asked Johnson for the money, and he said, "I have nothing to do with the office," and referred witness to Mr. Morrison, the auditor, who asked witness what he wanted. Witness told the auditor that he wanted a package of money that respondent had written that he had ordered sent to Ainsworth to witness' order. Morrison then asked Johnson if this was the money in question, and the former said it was. Morrison then said that the money was not there; that it had mysteriously disappeared.

It appeared from the said deposition of the said E. E. Johnson that he was also agent for the Northern Pacific Railway Company during the time he was agent for the appellant, and that the appellant was a contractor in building the railroad for said railway company. Johnson also testified, under objection made by appellant, which will hereafter be noticed, that in the receipt of the said package of money he was acting as agent for the appellant; and he further testified that at no time during the month of January, 1884, was he acting as agent for the respondent. The respondent gave in evidence a circular signed by W. J. Footner, after giving evidence that said Footner was superintendent of the appellant, and that it was within the scope of his business as such superintendent, among other things, to see to the safe delivery of packages of money and other valuables intrusted to the company, and to use all necessary means, including the offering of rewards, for the recovery of money or packages lost while in the company's charge, and that in relation to the money in question he wrote and signed in his official capacity, and had posted in conspicuous places, the said

circular. The appellant objected to its introduction, but the court overruled the objection, which will also be considered hereafter. The following is a copy of the said circular, viz.:—

"NORTHERN PACIFIC EXPRESS CO.

"OFFICE OF THE GENERAL SUPERINTENDENT, ST. PAUL, MINN.

"$1,000 *Reward.*

"The Northern Pacific Express Co. will pay the sum of $1,000 to any person who will give information sufficient to secure the

ARREST AND CONVICTION

of the party or parties guilty of the recent larceny at Ainsworth, W. T., of a

PACKAGE OF MONEY,

alleged to contain $18,784.27, belonging to Nelson Bennett; and will also pay in addition thereto ten per cent on all the said money that shall be recovered and paid over to said Nelson Bennett.                    . W. J. FOOTNER,

"General Superintendent."

It also appeared in evidence that after the said package of money had been delivered to the agent of the appellant for transportation, addressed and directed as before mentioned, and while the same was in the possession of appellant at Portland, Oregon, the said address was amended by the insertion of the word "agent" before the word "northern"; so that it made the said address read "Agent Northern Pacific Express Co., Ainsworth, W. T." It was made a material question in the court below as to how this change occurred. It was contended on the part of the appellant that it resulted from a modification of the original contract to transport the said package of money, whereby the said Ladd & Tilton consigned it to the said E. E. Johnson. That, in fact, was the appellant's main defense in the action, and the proof of it depended, to a great extent, upon the testimony of Mr. Browning, the assistant superintendent of the appellant at Portland, and Mr. Tedford, on one side, and Mr. T. B. Wilcox, the paying teller of Ladd & Tilton, on

the other. The question was one of fact, and the decision of the jury thereon is necessarily final. It has, however, been discussed in this court to some extent, and the letter of Ladd & Tilton of January 28, 1884, to "Agent Northern Pacific Express Company, Ainsworth," been referred to as corroborative of the appellant's testimony upon the subject. That letter unquestionably tends to show that the package of money might have been intended to be delivered to the agent as consignee, but it certainly is not conclusive upon that point, and the testimony of Mr. Wilcox puts a different phase upon the transaction. The jury doubtless were loth to believe that he would, under the circumstances, with the instruction of Donnell, Clark & Laribie before him as to whom the money should be sent to, and conscious of the consequences that might ensue to his principals in case of a violation of those instructions, deliberately agree to a different arrangement. At all events, I cannot conclude that the question, in the light of all the surrounding circumstances, ought to have been taken from the jury. It was left to them ; and for the purposes of this appeal, we must consider their verdict, unless they were misled by erroneous instructions, as determining that no such modification of said contract was agreed upon by said parties. The point last suggested being removed, it becomes necessary to consider the rights and liabilities of the parties in view of the other general circumstances of the case.

The package of money having been delivered to the appellant at Portland, addressed to the appellant at Ainsworth, with the knowledge upon the part of its agents that it belonged to respondent, presents a question as to appellant's duty, considered from that standpoint. It was insisted upon the argument that the appellant, under those circumstances, was itself the consignee, and that its duty as common carrier of the money was performed when it arrived at Ainsworth, and was delivered to its agent Johnson. The claim that the appellant could have been both carrier and consignee is, in my judgment, more fanciful than real. It would be difficult even to imagine how a party could deliver an article to himself. A consignment of

goods, transmitted through the means of a carrier, requires the intervention of the three parties, consignor, carrier, and consignee; and they each maintain an individuality. The two latter could no more be blended than one side of a triangle could be dispensed with and the figure preserved. The carrier's attempt to deliver the article to himself would be absolutely futile. When he begins the effort he has it in his possession, and after he has exhausted the effort he still has it in his possession. The proposition is logically untrue, is not susceptible of demonstration, and to my mind entirely figurative. I am aware that an expression indicating that such a delivery might be made, escaped from the court in *Mobile & G. Ry. Co.* v. *Prewitt,* 46 Ala. 63. The court said : "Here, then, there was a delivery, as the owner had directed; that is, to the railroad company itself, or to its agents, which was the same thing." But it was evidently an inconsiderate remark. It does not, however, follow that a common carrier cannot be relieved from the extraordinary liability which the law imposes upon that class of persons, although he retain possession of the article transported.

In the case above referred to the railway relieved itself from that character of liability, not by delivering the goods to itself, but by depositing them in its warehouse after the failure of the consignee to be present at the depot, ready to receive them upon their arrival. The goods, consisting of two boxes of merchandise, were ordered by the consignee and shipped by the railroad company, under an agreement, fairly inferable from the circumstances, that the company would transport them to its station No. 6 on its line, and deliver them there to the consignee, if he were present when they arrived; otherwise, would deposit them in its warehouse. The consignee was not present, and the company placed the goods in its warehouse, built, used, and maintained for the purpose, and of which fact the consignee of the goods had full knowledge when he ordered them sent. The case is similar to that of *Thomas* v. *Boston & P. R. Co.* 10 Met. 472. It belongs to that class of cases where the obligation of a carrier is affected by an established custom and usage. (Ang. Car. 4th ed. § 301.)

A railroad company would hardly be expected to deliver goods transported on its line at a place other than its depot, and a custom has arisen of depositing them, upon their arrival, in a warehouse provided for that purpose, in case the consignee is not then present ready to receive them. The custom may, in such cases, enter into and become a part of the terms of the contract of carriage. The deposit in the warehouse is supposed to be for the accommodation of the consignee, and when such is understood to be the case, the carrier, after such deposit, is relieved from the extraordinary liability of common carrier, and answerable only as an ordinary depositary. No such custom, however, exists in favor of an express company. The latter is not relieved from its liability as carrier until it has made a personal delivery or tender of the article conveyed, in case the consignee can be found. (*Witbeck* v. *Holland*, 45 N. Y. 13.) The personal delivery of the goods, or tender of them to the consignee, is as much a part of the duty of an express company, and generally of a common carrier, as the transportation of them when received by the carrier for that purpose. In the present case the package of money was received by the appellant, the Northern Pacific Express Company, directed to the Northern Pacific Express Company, Ainsworth, by a superscription thereon written. Its officers and agents knew that it belonged to the respondent. Its agent at Ainsworth had already been advised by the respondent that he had ordered it sent from Portland, and was directed to deliver it, when received, on order of H. D. Sims, countersigned by T. B. Taylor.

Under these circumstances, it was obviously the duty of the appellant not only to carry the package to Ainsworth, but to deliver it personally to the respondent, or upon his order, if the parties could be found; and its duty as common carrier was not performed until reasonable efforts were made by it to inform those parties that the package had arrived and was waiting to be delivered. The case is entirely unlike that of the shipment of goods by a carrier under a known usage and course of business, that they are to be deposited in the carrier's warehouse, or under a contract that the carrier is to hold them for the

accommodation of the consignee. The appellant's agent at Ainsworth, instead of being engaged in exhibiting part of the money at saloons, should have been making efforts to notify Sims and Taylor that it had arrived and was ready to be delivered. This might have occasioned some inconvenience to the express company, as those parties were some thirty miles away; but that matter should have been considered before it undertook the business, and been provided against.

It is unnecessary to determine what the rights of the parties would have been if the appellant had not known who the money belonged to, and had not been informed to whom it was to be delivered; in other words, if Ladd & Tilton had merely deposited the package with the appellant, addressed in the manner it was, and had not been informed as to who it belonged to, nor been instructed by the owner of it in regard to its delivery. Such was not the case, and the transaction must be viewed in the light of its surroundings. In that view of it, we cannot regard the appellant as the mere depositary of the money at any time prior to the time it was stolen. The delivery of the money to appellant's agent, Johnson, and taking his receipt therefor, did not constitute a delivery that relieved the appellant of its duty in the premises as common carrier. If the jury had found under the evidence that there was expressly or impliedly an agreement that the appellant should deliver the money to Johnson as agent of respondent, our holding would be different. And the authorities seem to hold that, where the goods are consigned to the owner in care of an agent of the carrier, a delivery to such agent will constitute a complete delivery, and exonerate the carrier. But such determination must proceed upon the ground of a tacit understanding between the parties that the carrier's agent was to become the agent of the owner for the receipt of the goods. But, unfortunately for the appellant in this case, the jury made no such finding; on the contrary, they, in effect, found that Johnson was not the agent of the respondent for any such purpose, which completely put an end to that branch of the appellant's defense.

The defense that the respondant failed when he made the

written demand for the money at Portland on the 16th day of February, 1884, to present the appellant's receipt of its shipment, in conformity with the terms and conditions of the receipt, might, according to some of the authorities, have been a bar to the respondent's action. It is an open question as to whether such a condition in a receipt of that character is reasonable or not; but in any event it was a condition that the appellant had the right to waive, and we are of the opinion that it did waive it by not exacting a compliance therewith when the demand was made. If the payment of the money had been withheld upon that ground especially, the appellant would have been in a condition to claim it as a defense, but it did not require a surrender of the receipt as the alternative of its payment of the loss. Had it done so the probabilities are that the respondent would have complied strictly with the condition, and the lawsuit been prevented. The condition must be supposed to have been inserted in the receipt for the benefit of the appellant, and if its refusal to pay the claim when demanded was upon the ground that it had discharged the duty it owed the respondent, it ought not to be allowed to complain of the nonproduction of that instrument. Its right to exact it in any case is merely technical, and if insisted on would have the appearance of captiousness. As to whether or not it was a reasonable condition we express no opinion. Our decision of the point is upon the ground suggested: that the appellant waived the right to exact a compliance with it by making a general refusal to pay the money, instead of making it specifically upon that ground. Courts ought to construe conditions that are apparently unimportant, but which, in terms, forfeit a claim if not complied with, strictly. That is supposed to be the rule in all cases of forfeiture.

The other defense, that the respondent should have been at the express office at Ainsworth when the money arrived, ready to receive it, could not be sustained without proof that such was the contract; and the fact that the package was directed as before mentioned, in view of the other facts, did not establish such proof, whatever might have been the effect if it had not

stood alone. If it could have been inferred from the address upon the package that the appellant was to retain the money at Ainsworth to suit the convenience of some owner who should thereafter call for it, that inference was rebutted by the proof that the appellant knew when it received the package the person to whom it belonged, and had been instructed to deliver it on the order of Sims, countersigned by Taylor; and the appellant's obligation, construed by the facts and circumstances of the case, required it to carry the money from Portland to Ainsworth, and deliver it to the person Sims should, by his order, countersigned by Taylor, appoint to receive it. A delivery was not dispensed with, but on the contrary, it was enjoined. Until such delivery was made, or dispensed with in consequence of the neglect of the respondent, after he or his agents were notified of the arrival of the money to call for it, the duty of the appellant pertaining to the matter was unperformed, and it remained liable in its character of common carrier.

Upon the facts of the case, including those necessarily found by the jury, we conclude that the law is with the respondent, unless there was error in the admission of evidence, or in the instructions the court gave to the jury.

The first exception taken by the appellant was to the ruling of the court upon the motion for a nonsuit. The motion was made after the respondent had submitted certain of his evidence tending to prove facts alleged in his complaint, and the court overruled it. Something was said upon the argument that all the proofs in the case tending to establish the respondent's alleged cause of action had not been given when he rested his case and the motion for a nonsuit was made, but as I understand the rule, that fact is entirely unimportant. If the respondent, when he rested, had not proved a cause sufficient to be submitted to the jury, yet the appellant, after the motion was overruled, went into his defense, and the respondent then supplied his proofs so as to render them sufficient, the appellate court will not review the ruling upon the motion. If the appellant desired to raise the question of the sufficiency of the respondent's proofs at the time he first rested his case, he should

have rested also. This court would not be justified in reversing the judgment in consequence of the refusal to nonsuit the respondent, unless it were satisfied that, from all the evidence given upon the trial, he had failed to prove a cause sufficient to be submitted to the jury. The view we have already indicated regarding the merits of the case disposes of the question of nonsuit, so far as we are authorized to consider it upon this appeal.

The next exception was to the ruling of the court below upon the objection to the admission in evidence of the circular notice, signed by Footner, offering the reward. We think that evidence was competent. It was an admission of the appellant, not one of its agents; an act from which could be inferred an acknowledgment upon the part of the company that it was liable for the loss of the money. That character of evidence is admissible. (*Fox* v. *Adams' Exp. Co.* 116 Mass. 292.) It mattered not when the circular was issued. It tended to show an acknowledged liability upon the part of the appellant, and was properly received in evidence for that purpose. The act was not conclusive. It was open to explanation, like the adjustment of a loss on a policy of insurance, but, nevertheless, a competent admission to be given in proof.

The next exception was to the ruling of the court upon the objection to the question asked the witness E. E. Johnson, which question was as follows: " In what capacity, and for whom, were you acting in the receipt of the package of money in question?" He answered "that he was acting for the Northern Pacific Express Co." · The ground of the objection was that it referred a question of law to the witness; that it called for an answer involving a construction of the contract entered into between the parties, in view of the circumstances under which the package was sent and received by him. But it could not have been so understood by the counsel who put the question, nor by the court who permitted the answer to be given, nor would the witness have been likely to have attempted to answer it if he had supposed that it covered as broad grounds as that. He evidently understood that the inquiry only related to his immediate business connection with the parties at the

time. In that view the question was proper, but under the other it would have been an affront to the court to have asked it. We are not authorized to presume error, and hence conclude that the question was not intended, nor understood by the court as intended to elicit from said witness his conclusion as to the capacity in which he was acting, and for whom he was acting, in his receipt of the package, formed from the facts and circumstances of the case, but that it was merely an inquiry as to the fact of his relation to the parties in the transaction of the business. He must have known whether he was agent for the express company or for Nelson Bennett in the receipt of the money, or for both, from facts within his own knowledge; and, certainly, he was not expected to state the fact from ulterior facts of which he had no personal knowledge. It is probable that, as between the witness and express company, he might have been the agent of the latter, and at the same time, as between the company and Bennett, have been the agent of Bennett. If Ladd & Tilton had agreed with the express company that the package should be sent to Ainsworth in the manner it was sent, and that Johnson should receive and hold it for Bennett, as between the contracting parties, the law would have regarded Johnson as the agent for Bennett, although he was not privy to the contract. But we have no right to presume that the question asked the witness had reference to any agency of that character, or was so understood. The exception, therefore, was not well taken.

The exception to the ruling of the court upon the objection of appellant's counsel to the question asked the witness Wilcox, as to whether he had received any letter from Donnell, Clark & Laribie, showing their disapproval of his action in the matter of sending the money, is claimed to have been well taken; also the exception to the ruling of the court, upon the objection of said counsel to the question asked the witness H. B. Sims, as to what he did when he arrived at the office of the appellant at Ainsworth, in obedience to certain instructions referred to in the question; but I am unable to understand how the answer to the former question could have affected the verdict of the jury. It

may not have been material; but it was harmless, and could not have prejudiced the appellant. The latter question, in my opinion, was competent. The respondent had instructed Sims that money would be sent to Ainsworth for respondent, and Sims produced letters of instructions concerning it. I think the objection to that question was properly overruled. The remaining exceptions were taken to the charge given by the court to the jury, and in the refusal of the court to charge as requested by the appellant's counsel. We have examined the several instructions given by the court, and believe them to be substantially correct. The appellant's objections to them, in the main, arise out of the view its counsel takes as to the nature and extent of the duty the appellant was under in regard to the delivery of the money in question. They have been considered, generally, in the review of the merits of the case. The defense interposed by the appellant, that after the package of money was deposited with its agents for transportation and was still in the city of Portland, and before its delivery to the express messenger, the appellant and Ladd & Tilton mutually agreed to modify the contract so as to consign the money to E. E. Johnson, was fairly submitted by the court to the jury. The court went further, and instructed the jury that the appellant was not liable if they found that it was the understanding between Ladd & Tilton and appellant that the latter was to take the money to Ainsworth, and after it arrived there retain it for respondent. By sharp criticism some inaccuracies may be pointed out in reference to the instructions, but they were intelligible, and conveyed to the minds of the jury a correct idea of the law applicable to the facts of the case.

We have also examined the instructions asked to be given to the jury by the appellant's counsel and refused by the court, and we find that they contain no more than the counsel's theory of the case, which they have been endeavoring to establish as a defense. Our view of the matter, embraced in the proposed instructions, has been fully expressed in our consideration of the grounds of the defense, and it is unnecessary to restate it, further than to reaffirm that it is the duty of a common carrier

to deliver the article personally to the consignee if he be found, and if not found, to use reasonable efforts to ascertain his whereabouts, and to notify him of its arrival; that the carrier's duty in such case is not discharged until such delivery, or until after reasonable efforts have been made to find and notify the consignee as mentioned, and that the carrier will not be considered or treated as consignee of the goods, or relieved from his duty to deliver them, or make reasonable efforts to find the party for whom they are intended, because of the package being addressed to the carrier at a particular place, when he knows the owner and has received directions from him as to whom to deliver it to, unless there has been an understanding between the parties to the transaction that the carrier should hold the package for the convenience of the owner; in which latter case he would, from the time of the arrival of the article, be answerable only as an ordinary depositary thereof.

In this case, the question as to the understanding of the parties upon that subject was properly submitted to the jury, and their verdict is decisive of it. The judgment is therefore affirmed.