Argued July 5, decided July 26, 1910.

# HARDING v. OREGON-IDAHO COMPANY.

[110 Pac. 412.]

EXCEPTIONS, BILL OF—TIME FOR SETTLEMENT.

1. Where a judgment was entered February 4th, notice of appeal served on February 16th, and the appeal perfected on February 26th, and a bill of exceptions was presented to the trial judge on March 13th, and allowed on the 17th, and a transcript filed with the clerk of the Supreme Court on April 3d, the fact that the bill of exceptions was not allowed until after the appeal was perfected, is not ground for striking it out, the Supreme Court not having acquired jurisdiction until the transcript was filed.

TRIAL—TAKING QUESTION FROM JURY—NONSUIT—SUFFICIENCY OF EVIDENCE.

2. Where there is any evidence, however slight, fairly susceptible of an inference or presumption tending to establish the material averments of the complaint, a nonsuit will be denied.

EVIDENCE—ADMISSIONS—AGENTS.

3. Where the president of a corporation is not a party to an action against it, his acts and declarations, made while acting outside of his duties and authority as an officer of the corporation, are not competent evidence against it.

PRINCIPAL AND AGENT—AUTHORITY OF AGENT—EVIDENCE—DECLARATION OF AGENT.

4. The authority of an agent cannot be shown by his own statements or acts unless it is shown that the principal knowingly acquiesced therein.

CORPORATIONS—AUTHORITY OF OFFICERS—PRESIDENT.

5. The office of president of a corporation does not confer authority to bind the corporation or control its property, but his power as an agent must be sought in the organic law of the organization,, the by-laws, or in some special order of its board of directors, or must be implied by some acquiescence or ratification on the part of the corporation.

TRIAL—REFUSAL OF NONSUIT—WAIVER OF ERROR.

6. Where, after motion for nonsuit has been overruled, defendant goes into his defense and the defects in plaintiff's case are supplied, the appellate court will not review the ruling upon the motion.

LOGS AND LOGGING—CONTRACTS RELATING TO—ASSIGNMENT.

7. Where F. was the owner of timber land, and S. contracted to construct a sawmill thereon, and F. agreed to furnish timber and do the logging and deliver the logs at the mill for a certain price, and S. guaranteed that the mill cost of manufacturing the logs and lumber should not exceed a certain price, and it was agreed that they should share in the profits, where S. sold the mill to F., and, in the meantime, F. organized a corporation and sold to it the timber and assigned to it his interests in the contract, reserving the obligation to do the logging and to receive the profits arising therefrom, the corporation became the owner of the timber obligated to sell it to F. for the price named in the contract and one-half of the net proceeds of manufacturing it while F. was to do the logging and

cut the timber into lumber and sell and dispose of the lumber; and the corporation assumed no liability for expenses incurred either in the logging operations or in the operations of the mill.

CORPORATIONS—ACTIONS—EVIDENCE—SUFFICIENCY.

8. In an action against a corporation, evidence *held* not to show that a corporation authorized its president to use its name or credit in conducting the business or that it held him out as its agent or acquiesced in his acts so as to render it liable on a contract sued on.

From Douglas:  JAMES W. HAMILTON, Judge.

Statement by MR. JUSTICE SLATER.

This action was brought by J. Harding against the Oregon-Idaho Company, a corporation, to recover the price of certain goods, wares and merchandise alleged to have been sold and delivered by plaintiff to the defendant, a corporation, and to other parties, between October 1, 1907, and February 29, 1909, at defendant's special instance and request, through L. R. Ferbrache, its president and manager, and also to recover money paid to other parties under like circumstances.

It is alleged that defendant is a private corporation, organized and existing under the laws of this State, and engaged in the business of manufacturing lumber, with its mill and principal place of business at Glendale, in Douglas County.

The answer consists of a general denial.  The cause was tried before a court without a jury, and at the conclusion of plaintiff's case defendant moved for an involuntary nonsuit, based principally upon the assertion that there was no competent evidence to connect the defendant with the several transactions upon which the right to recover is predicated.  The motion was denied, whereupon defendant offered testimony, tending to show that it did not own or have any interest in the operation of the sawmill.  But the court found that defendant and Ferbrache were jointly engaged in getting out sawlogs in the vicinity of Glendale, and in manufacturing lumber therefrom; that Ferbrache was the principal owner of the capital stock of the defendant corporation, and president

thereof; that by consent and agreement of defendant, Ferbrache was in control of its property and acting as its agent, and while so engaged had agreed with plaintiff that goods should be furnished by him to the employees of defendant and Ferbrache, which should be charged to and paid by the latter, out of the wages due such employees; that under such agreement, and upon special orders executed by Ferbrache, goods to the amount of $840.15 were furnished by plaintiff to Ferbrache and to his employees, which goods had not been paid for, although Ferbrache had withheld and retained from the wages, due the persons securing the goods, an amount exceeding the sum found to be due plaintiff. Judgment for that amount was accordingly entered in plaintiff's favor, from which defendant has appealed.

REVERSED.

For appellant there was a brief over the names of *Mr. John K. Kollock* and *Mr. Albert Abraham,* with an oral argument by *Mr. Kollock.*

For respondent there was a brief over the names of *Messrs. Fullerton & Orcutt,* with an oral argument by *Mr. Albert N. Orcutt.*

MR. JUSTICE SLATER delivered the opinion of the court.

1. We find in the record a motion by plaintiff to strike out defendant's bill of exceptions. The motion is based solely upon the fact that the bill of exceptions was presented to the trial judge and settled and allowed by him a few days after the appeal was perfected. No argument in support of the motion, either in typewritten brief, as required by the rules of this court, or orally at the hearing on the merits of the whole cause, has been furnished to this court. Under such circumstances we would perhaps be justified in summarily overruling the motion as having been abandoned or waived. We have, however to the same extent looked into the question suggested by the

motion, but find no merit in it. The judgment was entered on February 4, 1909, notice of appeal was served on the 16th, and the appeal was perfected on the 26th. The bill of exceptions was presented to the trial judge on March 13th, allowed on the 17th, and the transcript filed with the clerk of this court on April 3, 1909.

This court has pursued a very liberal policy in construing the power of a trial court to settle and sign a bill of exceptions; the rule adopted being that, because the statute has fixed no time in which the bill should be presented and allowed, the matter is within the discretion of the trial judge, and, when exercised, his decision or action will not be disturbed. In *Henrichsen* v. *Smith,* 29 Or. 475 44 Pac. 486: 44 Pac. 496) it was held that the failure of an appellant to submit his bill of exceptions within the time limited by the trial judge, after the expiration of the term, does not prevent the judge from thereafter signing it, if otherwise proper. For a general review of the Oregon cases on this subject, see *Hayes* v. *Clifford,* 42 Or. 568 (72 Pac. 1.) The service and filing of the notice of appeal, and the execution and service of the undertaking thereon, does not of itself deprive the lower court of jurisdiction or confer jurisdiction on this court; that is accomplished by filing within 30 days thereafter the transcript in the case with the clerk of this court. Section 553, B. & C. Comp. Under the circumstances presented by the motion, the judge had power to act, and, having acted, this court cannot disregard what was done. The motion is therefore overruled.

2. Considering the motion for nonsuit, the rule is well-settled in this State that if there is any evidence, however slight, fairly susceptible of an inference or presumption, tending to establish the material averments of the complaint, it is the duty of the court to deny the motion: *Currey* v. *Butcher,* 37 Or. 380 (61 Pac. 631) ; *Perkins* v. *McCullough,* 36 Or. 146 (59 Pac. 182; *Putnam* v. *Stalker,*

50 Or. 212 (91 Pac. 363.) But after a careful scrutiny of plaintiff's evidence we are unable to discover any competent evidence from which an inference may be drawn that the defendant owned any interest in the mill, or had anything to do with its operation, or that Ferbrache, by express or implied authority, was authorized to contract for defendant. Nor does the evidence tend to show that he attempted to bind the defendant in any transaction connected with this case. There is evidence sufficient to show that the defendant is a duly organized and existing corporation, invested with power to engage in the manufacture of lumber, but there is no direct evidence that the defendant owned any sawmill, or was engaged in the business of manufacturing lumber, or in any branch of business connected therewith; nor do we think there is any competent evidence from which an inference might be drawn that it was so engaged.

3. It is admitted that the defendant owned considerable timber land in the vicinity of Glendale, and that one L. R. Ferbrache is the president of the defendant. Plaintiff, testifying in response to a question directed to him, to state whether he had had any agreement with the defendant through Ferbrache, president, to deliver goods from his store to the employees of the defendant, said that he had. This question assumes that the defendant was engaged in some business, and had employees, without any proof having been offered to establish such facts; but when plaintiff was asked to state what the agreement was, he said:

"He (Ferbrache) told me to let the men have anything that they wanted, not to exceed what they had coming to them, and he would see that it was held out of their pay."

This tends to show only an agreement personal to Ferbrache, and not with defendant; and, unless some other competent evidence was offered, tending to show that the defendant was operating some business under the management of Ferbrache, that the employees referred to

were its employees, and that it received the benefit there-
of, such an agreement would not bind the defendant. The
merchandise furnished by plaintiff under this agreement
was charged on his books of account to Ferbrache person-
ally, and none of the items included in his demand were
charged to the defendant. But it is sought to connect the
defendant with these transactions by attempting to show
that defendant was the owner of the mill, and that the
business conducted by Ferbrache was its business. For
this purpose plaintiff testified that he saw where the
name "Oregon-Idaho Company" had been painted on some
of the machinery in the mill, and introduced a number of
railroad way-bills, showing that material and parts of
machinery had been shipped to Glendale, apparently by
the defendant as consignor, and that such property had
been received and receipted for by Ferbrache, as president
of the defendant, and by one A. E. Shiria, who was acting
as superintendent of the mill, and that such material and
machinery had been used in the mill, but it was not shown
that such things had been done by any one authorized to
act for the company, nor that they were done with the
knowledge, and acquiescence of any of the officers of
the company other than Ferbrache, who it was admitted
is, in fact, president of the defendant. A. E. Shiria, how-
ever, testified in plaintiff's behalf that he constructed this
mill for himself, and sold it to Ferbrache, and was there-
after employed to act as superintendent of the mill, but
that he did not know who in fact owned the mill; that he
had been directed by Ferbrache to order material and
machinery for the mill either in his (Ferbrache's) name,
or in the name of the Oregon-Idaho Company, saying that
it made no difference; and that he, witness, caused the
material and machinery, shown by the waybills, to be
shipped in the name of the company. We find in the
record another piece of evidence, consisting of a number
of time checks, that had been issued to employees in and

about the mill and logging business, showing upon their face a specified amount due for wages to the person named therein, and payable within thirty days. These time checks are upon a printed form, with the name of the defendant printed at the bottom. Some of them have been signed by Ferbrache, as president of the defendant, and also have written thereon, with pen and ink, his personal guaranty of payment. They are not connected with any transaction involved in this action, although some of them appear to have been issued to some of the same persons to whom plaintiff furnished goods. They are apparently offered as admissions by the defendant of its interest in the business and of its liability for the wages of the employees. But Shiria testifies that by direction of Ferbrache he prepared and submitted to him the form for these time checks, and that after they were printed and some of them had been signed by Ferbrache as president, he filled them out and issued them to employees working in the logging camp, as occasion required, but there is no direct evidence that Ferbrache had any express authority from defendant to issue such time checks, or that any other officer of the defendant corporation had knowledge thereof, or recognized the defendant's liability on account thereof. Some of them came into plaintiff's hands, and, not being paid, he brought a separate action against defendant and Ferbrache jointly to recover the amount acknowledged to be due thereon, and attached the mill property, a donkey engine and some other property. Plaintiff testifies that after the action was filed and the attachment was made, "they came in and paid" to his attorney, Mr. Orcutt, the amount demanded, and the action was dismissed. But it was not shown that payment was made by the corporation or by any one other than Ferbrache. After the present action was brought, a part payment, amounting to $1,000, was made to plain-

tiff upon the amount demanded by him, but it was paid by Ferbrache personally.

The foregoing is a brief statement of plaintiff's testimony, upon which he relies to establish defendants interest in the business and its liability upon Ferbrache's dealings with plaintiff, excepting perhaps there were shown declarations of Ferbrache to plaintiff and to third parties · to the effect that he was president of the corporation; that he owned 80 per cent of its stock; that he was the corporation, because he owned most of the stock, and that he had turned over to the corporation the mill and logging business.  But there was other evidence that he owned no more than a bare majority of the stock, and that others, having no connection with the transactions in question, owned and held a substantial amount of the stock of the defendant corporation.  Ferbrache is not a party to this action, and his acts and declarations, made while acting outside of his duties and authority as an officer of the defendant, are not competent evidence against it.

4. The authority of the agent cannot be shown by the alleged agent's own statements or acts, unless it be shown that the principal knowingly acquiesced therein: *Connell v. McLoughlin,* 28 Or. 230 (42 Pac. 218) ; *Harrisburg Lumber Co.* v. *Washburn,* 29 Or. 150, 163 (44 Pac. 390) ; *Wicktorwitz* v. *Ins. Co.,* 31 Or. 569 (51 Pac. 75) ; *Hannan* v. *Greenfield,* 36 Or. 97, 103 (58 Pac. 888) ; *Sloan* v. *Sloan,* 46 Or. 36, 39 (78 Pac. 893).

5. Neither does the office of president of a corporation confer authority to bind the corporation or control its property: 10 Cyc. 903; *Wait* v. *Nashua Armory Ass'n,* 66 N. H. 581 (23 Atl. 77: 14 L. R. A. 356: 49 Am. St. Rep. 630) ; *Lyndon Mill Co.* v. *Lyndon Literary Inst.,* 63 Vt. 581 (22 Atl. 575: 25 Am. St. Rep. 783).  The president's power as an agent must be sought in the organic

law of the organization—the by-laws—or in some special order of its board of directors, or must be implied by some acquiescence or ratification on the part of the corporation, whose powers are, under the law, exercised by the directors: *Crawford* v. *Albany Ice Co.*, 36 Or. 535, 537 (60 Pac. 14).

6. In the present case it is not shown or attempted to be shown by plaintiff that Ferbrache ever claimed to be acting for the defendant in any of the transactions involved in this action, or that the business he was conducting belonged to the defendant, or that it had any interest therein, or that he attempted to bind it by contract. Plaintiff, however, invokes the rule announced in *Bennett* v. *Northern Pac. Express Co.*, 12 Or. 49, 68 (6 Pac. 160), to the effect that where defendant, after motion for nonsuit has been overruled, goes into his defense, and the defects in plaintiff's case are supplied, the appellate court will not review the ruling upon the motion. This case was followed and applied in *Trickey* v. *Clark,* 50 Or. 516, 519 (93 Pac. 457) ; *Freeman* v. *Trummer,* 50 Or. 287 (91 Pac. 1077), and *Patty* v. *Salem Flouring Mills Co.*, 53 Or. 350, 363 (96 Pac. 1106: 98 Pac. 521: 100 Pac. 298). There can be no question about the principle enunciated, but how it is to aid plaintiff in this case we are unable to ascertain.

7. No particular testimony offered by the defendant has been pointed out by plaintiff's counsel as supplying the apparent deficiency in his case. We presume, however, that some reliance is put upon the written contract offered by the defendant, for it appears that it was upon such contract that the lower court based its findings. This contract was executed between Ferbrache and Shiria and has to do with the construction and operation of the mill. The proof preliminary to its introduction shows that at the time of it execution Ferbrache was the owner of some 3,000 acres of timber land, known as the Abraham

tract, which fact is also recited in the contract, and that
A. E. Shiria wished to construct a mill to saw all timber
thereon into lumber. He agreed in the contract to con-
struct on the land within ninety days a sawmill of a cer-
tain specified capacity, and when completed to operate it
and cut the timber into lumber. Ferbrache agreed to
furnish the timber at $1.00 per M. stumpage, and to do
the logging and deliver the logs at the mill for the price of
$4.00 per M. board measure. Shiria guaranteed that the
mill cost of manufacturing the logs into lumber should
not exceed $3.00 per M.

The foregoing items were to be paid first in the order
mentioned out of the proceeds derived from the sale of
the lumber. Then the contract declares that Ferbrache
and Shiria were to be equal partners in the profits arising
from the manufacturing of the timber into lumber under
this contract. The former built the logging roads and
furnished the machinery and equipment necessary to do
the logging. The latter built the mill, but before its
completion he sold it to Ferbrache. In the meantime
Ferbrache organized the defendant corporation, and sold
and conveyed to it the timber, and assigned to it his inter-
est in the above-mentioned contract, but reserved to him-
self the obligation to do the logging and to receive the
profits arising therefrom. The result of all these trans-
action was to leave the defendant the owner of the timber,
but obligated by the Shiria contract to sell it to Ferbrache
for $1.00 per M. stumpage, and one-half of the net pro-
ceeds of manufacturing it into lumber; while, on the
other hand, Ferbrache, by purchasing Shiria's interest,
was to do the logging, cut the timber into lumber at a
cost not to exceed $7.00 per M. board measure, and to
sell and dispose of the lumber. It must be plain from
this relation of the parties that the defendant assumed
no liability by virtue of the contract for the expenses
incurred, either in the logging operations or in the opera-

tion of the mill, and that the only interest it had in such enterprise was in the net profits derived from the sale of the lumber.

8. Nor do we find any other evidence tending to show that it ever authorized Ferbrache to use its name or credit in conducting such business, or that it held him out as its agent, or in any manner acquiesced in the acts of Ferbrache in the use of its name upon the time checks issued, or in purchasing or shipping machinery in its name. All the payments made to the creditors of the mill or logging business appear to have been made by Ferbrache, at least it is not affirmatively shown that anything was ever paid by the corporation.

It follows that the court erred in denying the motion for a nonsuit, and the judgment must be reversed and the cause remanded for a new trial.          REVERSED.