Argued February 29, reversed March 21, rehearing denied April 25, 1916.

# WILSON v. INVESTMENT CO.

## (156 Pac. 249.)

### Account Stated—Trial—Instructions.

1. In an action against a corporation and its president on an account stated, where there was no evidence or contention that the bill was the president's bill, or that in promising it would be paid, he acted in any capacity other than as president, an instruction that, if he promised to pay the bill, he was liable, and that it did not matter whether it was unreasonable or what it was for or anything about it, providing that it was based on some transaction between plaintiff and the president, and that, "if it was my bill, or your bill," the president's agreement could not support an action on a stated account, was erroneous.

[As to law of accounts stated, see note in 136 Am. St. Rep. 37.]

### Corporations—Authority of Officers—Statutory Provisions.

2. Under Section 6691, L. O. L., providing that the president of a corporation shall preside at meetings of directors and perform such other special duties as the directors may authorize, and Section 6693, empowering the president to act as inspector of elections, the president of a corporation had no authority to bind the corporation by a promise to pay a bill in the absence of any by-law, special order of the directors, or usage or custom of the company authorizing him to bind it by contracts.

[As to authority of officer to represent corporation as inferred from manner in which he has been permitted to act, see note in Ann. Cas. 1913D, 646.]

### Trial—Verdict—Sufficiency.

3. The rule that the court may disregard clerical errors in a verdict where the intention of the jury is obvious could not be applied to a verdict finding for plaintiff against "the defendant" in an action against several defendants, where, under the circumstances of the case, it could not be determined whether the jury intended to find against more than one defendant, or, if so, which ones.

From Multnomah; ROBERT G. MORROW, Judge.

Department 1.    Statement by MR. JUSTICE BENSON.

This is an action by Thomas J. Wilson against the Investment Company, a corporation, E. Quackenbush and Alfred H. Faber upon an account stated, in which the complaint alleges substantially that between September 24, 1908, and February 5, 1910, plaintiff, at the

special instance and request of defendants, furnished material and performed labor in painting, burlapping, tinting and varnishing a certain dwelling-house in Portland; that on or about January 10, 1910, an accounting was had wherein it was found that defendants were indebted to plaintiff in the sum of $325, which defendants promised to pay, and that no part thereof has been paid.

The defendants E. Quackenbush and Investment Company filed an answer denying the allegations of the complaint, and defendant Faber made default. A trial was had, resulting in a verdict which reads as follows:

"We, the jury in the above-entitled case, find for the plaintiff and against the defendant in the sum of $325."

Thereafter a judgment was entered upon such verdict against all the defendants in accordance with the prayer of the complaint. The answering defendants appeal.        REVERSED.

For appellants there was a brief and an oral argument by *Mr. Ralph R. Duniway.*

For respondent there was a brief over the name of *Messrs. Wilson, Neal & Rossman,* with an oral argument by *Mr. George Rossman.*

MR. JUSTICE BENSON delivered the opinion of the court.

The assignments of error are numerous, but we deem it unnecessary to discuss all of them. Defendants contend that there is no evidence which could justify a judgment against E. Quackenbush, and in this they are supported by the record. It is undisputed that the work was ordered by Faber, and it is sought to hold the

other defendants upon the theory that he was acting as their agent.    It is stipulated that the Investment Company is the holder of the legal title to the property, and that Quackenbush is president of the corporation. Plaintiff insists that the company ratified Faber's acts, and having agreed upon the amount due, promised to pay the same.    The only evidence to support this contention is that the bill was presented to Quackenbush, and that on several occasions when his attention was called to the matter he said that the bill was just and that he would pay it.    The most favorable evidence for plaintiff tending to bind the corporation to a stated account and ratification is that of W. B. Daggett, who testified as follows:

"Q. You say he said the bill would be paid.    Did he say who would pay the bill?

"A. He said he would.

"Q. He, Quackenbush?

"A. That is, the company.    He always talked for the company.

"Q. You mean the Investment Company?

"A. Yes, sir.

"Q. Which is the other defendant in this case.    Did he object to any part of the bill?

"A. He never objected to anything.

"Q. What was the amount of the bill that was presented?

"A. Three hundred and twenty-five dollars."

1. There is no contention that Quackenbush was the owner of the property or that the debt was in any manner his personal obligation.    The court, however, instructed the jury as follows:

"There is one question in this case, one ultimate question: Did Mr. Quackenbush promise Mr. Wilson that he would pay the bill?    If he did, he is liable; if he didn't, he is not liable; and I don't care whether it is reasonable or what it was for, or anything about it,

providing you find that it was based on some trans-
action between Mr. Wilson and Mr. Quackenbush.
That is all. If it was my bill, or your bill, Mr. Quacken-
bush's agreement can't support any action on a stated
account."

Since there was no evidence and no contention that
it was the bill of Quackenbush, or that he acted in any
capacity other than that as president of the corpora-
tion, this instruction is clearly erroneous.

2. We come, then, to the question of liability of the
Investment Company. Plaintiff appears to have
based the obligation of the corporation upon the al-
leged language and promises of Quackenbush as presi-
dent, but the record is absolutely silent as to his author-
ity to bind the company. The mere fact that a man is
president of a corporation does not give him any power
to bind the corporation in any way. His powers are
clearly defined in Sections 6691 and 6693, L. O. L., of
which the former provides that he shall preside at
meetings of the directors and perform such other spe-
cial duties as the directors may authorize, and the lat-
ter section empowers him to act as inspector of elec-
tions. Speaking upon this point, in *Luse* v. *Isthmus
Transit Co.*, 6 Or. 125 (25 Am. Rep. 506), Mr. Justice
SHATTUCK says:

"Referring to the general incorporation law of this
state (Section 9), we find that the president of a corpo-
ration is authorized to preside at the meetings of the
directors, and 'to perform such other special duties
as the directors may authorize.' By Section 11 he is
authorized to act as inspector of corporation elections,
and to certify who are elected directors. No other
authority seems to be conferred by the general law on
the president of the corporation. All other authority,
except to preside at the meeting, be inspector of elec-
tions, and certify who are elected directors, must be

derived from some by-law of the corporation, or some special order, or must be implied by some acquiescence or ratification on the part of the corporation, whose powers under our law are exercised by the directors.''

This ruling has been emphasized in *Crawford* v. *Albany Ice Co.,* 36 Or. 535 (60 Pac. 14; *Harding* v. *Oregon-Idaho Co.,* 57 Or. 34 (110 Pac. 412), and *Peek* v. *Skelley Lumber Co.,* 59 Or. 374 (117 Pac. 413); and such authority must be disclosed by the evidence. We have searched the record in this case in vain to find evidence, either of any by-law of the corporation, any special order of the directors, or anything in the way of usage or custom of the company, authorizing the president to bind the same by contracts.

3. We come, then, to consider the sufficiency of the verdict. It will be observed that it finds against the "defendant," and the court cannot, under all the circumstances of the case, determine whether the jury intended to find against more than one, or, if so, which ones were to be held liable. It has been held in many cases that the court may disregard clerical errors in a verdict where the intention of the jury is obvious, but this case does not fall within the rule. From these conclusions it follows that the motions for nonsuit should have been allowed. The judgment is reversed and the cause remanded, with directions to the trial court to enter a judgment of nonsuit as to the answering defendants.    REVERSED.   REHEARING DENIED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BURNETT and MR. JUSTICE MCBRIDE concur.