[No. 913. Decided December 28, 1893.]

ESTELLA M. ELWELL, *Respondent*, v. PUGET SOUND AND CHEHALIS RAILROAD COMPANY, *Appellant*.

CORPORATIONS — UNAUTHORIZED ACTS OF AGENT — ISSUANCE OF NEGOTIABLE NOTES.

A corporation is not bound by negotiable paper uttered by its agent, unless he has express authority to issue the paper, or there is an implied general authority arising from such frequent exercise of the power by the agent, followed by ratification, as to constitute a custom of the corporation, or a ratification of the particular act, or an estoppel to deny the agent's authority.

The fact that the president and manager of a corporation had executed negotiable notes in the corporate name, which they had taken care of without the knowledge of the board of trustees, will not render the corporation liable on other notes issued by such officers without the authority of the board of trustees, although the president and manager were two of the five trustees.

*Appeal from Superior Court, Thurston County.*

*Hughes, Hastings & Stedman*, and *Charles H. Ayer*, for appellant.

*Skillman & Agnew*, for respondent.

The opinion of the court was delivered by

STILES, J. — Respondent alleged the execution and delivery to her by appellant, a corporation, of its two certain promissory notes for $500 and $550, respectively, which were unpaid; and that, as accommodation indorser, she

had paid a note executed and delivered by appellant to the Capital National Bank of Olympia, in the principal sum of $500, which sum and interest appellant refused to pay. The answer contained a general denial, and alleged affirmatively that the pretended notes were never executed by the appellant's board of trustees, or authorized by it, or executed by any person or persons authorized so to do either by the board of trustees or the by-laws or charter of the corporation. And there was a further averment, that the notes were executed and delivered, if at all, without any consideration and for the purpose of defrauding appellant.

The first and second notes were signed: "P. S. & C. R. R. Co. By L. P. OUELLETTE, *President;* W. S. ELWELL, *Man. & Supt.;*" the third: "P. S. & C. R. R. Co., W. S. ELWELL, *Mgr.*" The manager was the husband of respondent, and his signature, and that of the president, was proven. Respondent loaned the money for which the first two notes were given, and paid the amount of the third one. The proceeds of all the notes went into the bank account of the appellant, and were checked out and appropriated to pay its debts. The manager and the president, of course, were two out of the five trustees. The manager testified that before the first of these notes was made, he had made other like notes which had been paid with appellant's funds. These notes were not brought to the attention of the board of trustees; witness told some of the members of the company of them. The principal place of business of the corporation and the place of its corporate meetings was Port Gamble; the transactions in question took place at Olympia.

The president testified that in a conversation had between himself, the manager and one Ames, also a trustee, at Port Gamble, he told Ames that he and the manager had had to borrow money from respondent, which was used to buy certain cattle. Could not say whether he

told Ames that any note had been given. (None of the notes in suit covered the money borrowed to purchase cattle.) Ames knew of the notes from having sent a man to Olympia to investigate the affairs of the company, where he saw the notes. This man was sent in behalf of the Puget Mill Company, which had been furnishing appellant money to operate with under a special contract.

For the appellant it appeared that the records of the company showed no authorization to the president or manager to execute notes. The corporation was engaged in a general logging business, and the manager's authority was limited by the by-laws to the supervision of the logging railroad, attending in detail to all matters pertaining to its successful operation, and keeping accurate accounts of the time and services of employés, and of all timber and logs cut and transported. No officer was designated by any article of incorporation or by-law to borrow money or execute notes.

The evidence thus summarized did not warrant a recovery upon the notes. Whatever else the general agent of an industrial corporation may do to bind his principal by contracts made by virtue of his implied authority, when it comes to uttering negotiable paper, to which, in the hands of innocent holders, there can be practically no defense, a strict rule applies. The agent must either have express general authority to issue such paper, or express authority to issue the particular paper, or there must be implied general authority arising from such frequent exercise of the power by the agent, followed by ratification, as to constitute a custom of the corporation. *Duggan v. Pacific Boom Co.*, 6 Wash. 593 (34 Pac. Rep. 157); or there must be ratification of the particular act, or an estoppel to deny that the agent had authority. Implied general authority, ratification and estoppel are each invoked in this case. But the substance of all the evidence on these points

amounted only to this, that the president and manager had made some notes to banks at Olympia, which they had taken care of, without the knowledge of the board of trustees; and that long after the notes in question were due an agent of the Puget Mill Company, sent by Ames, who was an employé of that corporation as well as a trustee of the appellant, had seen the notes at Olympia, and had presumably told Ames of them.   Ames had been told that the president and manager had borrowed money, but not that any notes had been given.   The only witnesses for respondent on any of these matters were the two officers who uttered the notes, one of whom was the husband of respondent.   These officers seem to have assumed to carry on the business at Olympia more as though they were partners than as if they were mere agents of a corporation.   The manager, especially, under the terms of his employment, had nothing to do with the financial part of the company's business.   The case, upon all material points, is covered by *New York Iron Mine v. Negaunee Bank*, 39 Mich. 644, and *McLellan v. Detroit File Works*, 56 Mich. 579 (23 N. W. Rep. 321).

The consideration that, as matter of fact, the proceeds of these notes went into the possession of appellant's agents and were used to pay its debts, is not entitled to any weight in this action.   In a proper action, where all defenses legal and equitable can be made, all sums which respondent contributed to the appellant's benefit can be recovered.

Judgment reversed, and cause remanded for dismissal.

ANDERS and HOYT, JJ., concur.

DUNBAR, C. J., dissents.