Argued January 28; decided February 28, 1898.

JONES *v.* HALE.

[52 Pac. 311.]

ESTOPPEL TO DENY CORPORATE ORGANIZATION.— One who conveys property to, or makes a contract with, a corporation which is exercising corporate functions and powers in pursuance of articles of incorporation regularly filed, under a law authorizing its organization, cannot question its corporate capacity upon the ground that no formal stock books were ever opened or stock subscribed, or because of other defects of organization.

MORTGAGE TO DIRECTOR.— A corporation, while solvent, may borrow money of an officer or director and give a mortgage on its property to secure the payment thereof, and the transaction, though viewed with suspicion by a court of equity, will be upheld, if it is fair and free from fraud.

From Lincoln: J. C. FULLERTON, Judge.

Suit by B. F. Jones against U. G. Hale, The Toledo Coal Company, C. B. Crosno, Milton Hale, Coll Van-Cleve, L. E. Blain and Geo. Landis, sheriff. There was a decree for plaintiff, from which U. G. Hale, The Toledo Coal Company and Milton Hale appeal.

REVERSED.

For appellants there was a brief and an oral argument by *Mr. H. C. Watson.*

For respondents there was a brief over the name of *Weatherford & Wyatt,* with an oral argument by *Mr. Jas. K. Weatherford.*

Mr. Justice Bean delivered the opinion.

The object of this suit is to have declared null and void a deed from the plaintiff of certain lands in Lincon County to the defendant corporation, the Toledo Coal Company, on the ground that such corporation was not a competent grantee to receive title, or, failing in this, to have the sheriff of Lincoln County enjoined from executing to defendant U. H. Hale a deed to such lands in pursuance of the purchase thereof made by him at a sale under a decree foreclosing a mortgage thereon in his favor, executed by the defendant corporation, on the ground that defendant M. Hale, one of the directors and president of the company, was in fact the real mortgagee and purchaser at such sale. The material facts are, that about March 30, 1891, the plaintiff and defendant C. B. Crosno were the owners of 175 acres of land in Lincoln County, which contained, as they believed, valuable coal deposits, and, in order to obtain assistance in opening and developing them, sold and conveyed a one half interest in said tract to the defendants M. Hale, L. E. Blain and Coll Van Cleve for the sum of $1,000. Thereafter the parties proceeded to prospect and develop the property, until June 20, 1891, when it was deemed advisable by all concerned to form a corpora-

tion to take and handle the property, in view of which Hale, Van Cleve and Blain purchased of Crosno and the plaintiff sufficient interest in the property to make each the owner of an undivided one fifth thereof. In pursuance of this agreement, articles of incorporation of the Toledo Coal Company, with a capital stock of $25,000, divided into shares of $5,000 each, were duly executed and acknowledged in triplicate by the several owners of the land, and filed in the office of secretary of state and of the proper county clerk, and thereupon the promoters, assuming to be stockholders, held a meeting, adopted bylaws for the government of the corporation, elected a board of five directors (each promoter being a member thereof), adopted a corporate seal, and such board of directors elected as officers of the corporation M. Hale, president, C. B. Crosno, secretary, L. E. Blain, treasurer, Coll Van Cleve, general manager, and the plaintiff, as superintendent of the mine, ever since which time the Toledo Coal Company has exercised the functions and powers of a corporation, stockholders' and corporate meetings have been held, directors and other officers elected, it has sued and been sued, and contracted and been contracted with, as a corporation. No formal stock books, however, were ever opened, or stock subscribed, but it was understood at the time of the organization that each of the promoters should, in consideration of his one fifth interest in the land referred to, be the owner of one share of paid-up stock, of the par value of $5,000, and proper certificates therefor were, in July, 1891, issued and delivered to them. Accordingly, on June 22, 1891, Crosno, Hale, Blain,

Van Cleve and the plaintiff duly conveyed to the company, by deed, the real property owned by them as tenants in common, and it immediately, by its officers, agents and employees, entered into and has ever since continued in possession and control thereof.

About the sixth of July, 1891, in pursuance of a resolution of the board of directors, at a meeting regularly called, all the members being present and participating therein, the corporation borrowed of the defendant M. Hale the sum of $1,900 for the purchase of a tract of land adjoining that conveyed to the company by the promoters, and also $1,500 to be used in developing the mine and for other and necessary corporate expenses.   But Hale, being advised that it would be improper for him to take a mortgage from the corporation on account of his official relations with it, arranged for the note and mortgage to be made in the name of his son, U. G. Hale; and on August 4, 1891, at a meeting of the board of directors, all the members being present and participating therein, a motion was unanimously adopted instructing the secretary to borrow of the latter the sum of $3,400, and to secure the payment thereof by a note and mortgage on the company's land, and to pay the same over to the defendant M. Hale to reimburse him for advances already made to the company.   In pursuance of this resolution a note and mortgage for $3,400 were duly executed and delivered by the corporation to the defendant U. G. Hale, who made, executed and delivered to his father his promissory note for such sum in payment of the advances made by him to the corporation.   Default having been made, the mortgage

was foreclosed, the land sold and purchased by the mortgagee, and one of the objects of this suit is to enjoin the execution of the sheriff's deed therefor. The whole theory of the plaintiff's case rests on two principal contentions: (1) That the Toledo Coal Company was never legally organized, and therefore the deed from him and his associates to it, of date June 22, 1891, was void for want of a competent grantee; and (2) that the mortgage from the corporation to defendant U. G. Hale was in fact a mortgage to the defendant M. Hale, and is void because, as its president, he had no right to take a mortgage on the corporate property to secure the payment of money loaned to the corporation.

1. The argument in support of the first proposition s that the corporation was not legally organized because no formal stock books were ever opened or stock subscribed. But this defect in the organization, if it is a defect, cannot be taken advantage of by the plaintiff. The Toledo Coal Company was, at the time the deed was made to it by plaintiff and associates, at least a corporation *de facto*, having a board of directors, president, secretary, treasurer and other officers, and exercising corporate functions and powers in pursuance of articles of incorporation regularly filed under a law authorizing its organization; and the proposition is thoroughly settled that a party who conveys property to or makes a contract with such a corporation is not in position to question its corporate capacity. "Where there is thus a corporation *de facto*," says Mr. Justice COOLEY, "with no want of legislative power to its due and legal existence; where it is proceeding in the per-

formance of corporate functions, and the public is dealing with it on the supposition that it is what it professes to be, and the questions suggested are only whether there has been exact regularity and strict compliance with the provisions of the law relating to incorporation, it is plainly a dictate alike of justice and of public policy, that in controversies between the *de facto* corporation and those who have entered into contract relations with it as corporators or otherwise, such questions should not be suffered to be raised": *Swartwout* v. *Michigan Air Line Railroad Company*, 24 Mich. 393. See also 2 Morawetz on Private Corporations, § 790; 1 Thompson on Corporations, §§ 507, 518; *Smith* v. *Sheeley*, 79 U. S. (12 Wall.), 358; *Broadwell* v. *Merritt*, 87 Mo. 95; *Casey* v. *Galli*, 94 U. S. 673; *City of St. Louis* v. *Shields*, 62 Mo. 247; *Worcester Medical Institution* v. *Harding*, 11 Cush. 285; *Eaton* v. *Aspinwall*, 19 N. Y. 119; *Leonardsville Bank* v. *Willard*, 25 N. Y. 574.

2. Assuming it to be true, for the purpose of the other question in the case, that the mortgage from the corporation to the defendant U. G. Hale was in fact for the use and benefit of the defendant M. Hale, to secure the payment of money loaned by him to the corporation, and thus plaintiff can question its validity in the suit, it does not follow that such mortgage, or the decretal sale thereunder, is void and of no effect, for undoubtedly a corporation, while solvent, may borrow money of an officer or director, and give a mortgage on the company's property to secure the payment thereof. Such a transaction will, of course, be viewed with suspicion by a court of equity, but

when perfectly fair and free from fraud it is legal and valid. Thus, in *Twin Lick Oil Company* v. *Marbury*, 91 U. S. 587, the defendant, who was a stockholder and director in the corporation, loaned to it $2,000, for which a note was given, secured by a deed of trust conveying all the property rights and franchises of the company to one Thomas, to secure the payment of such note, with the usual power of sale in default of payment. The property was subsequently sold under the trust deed, and purchased by the defendant. A bill was afterwards filed by the corporation praying a decree that he hold the property in trust for the corporation and for an accounting, on the ground that the deed of trust to Thomas and defendant's purchase thereunder were absolutely void because the defendant, being a director of the company, could not lend money to it and take security on the company's property therefor. But the court, speaking through Mr. Justice MILLER, in overruling this contention, said: "While it is true that the defendant, as a director of the corporation, was bound by all those rules of conscientious fairness which courts of equity have imposed as the guides for dealing in such cases, it cannot be maintained that any rule forbids one director among several from loaning money to a corporation, when the money is needed, and the transaction is open and otherwise free from blame. No adjudged case has gone so far as this. Such a doctrine, while it would afford little protection to the corporation against actual fraud or oppression, would deprive it of the aid of those most interested in giving aid judiciously, and best qualified to judge of the necessity

of that aid, and of the extent to which it may safely be given." And again in *Richardson* v. *Green*, 133 U. S. 30 (10 Sup. Ct. 80), the same court, in speaking of loans made by an officer and stockholder to a corporation, said: "Undoubtedly, his relation as a director and officer, or as a stockholder, of the company, does not preclude him from entering into contracts with it, making loans to it, and taking its bonds as collateral security; but courts of equity regard such personal transactions of a party in either of these positions, not, perhaps, with distrust, but with a large measure of watchful care, and unless satisfied by the proof that the transaction was entered into in good faith, with a view to the benefit of the company as well as its creditors, and not solely with a view to his own benefit, they refuse to lend their aid to its enforcement."

Any other doctrine than the one thus announced would, indeed, as Mr. Thompson says, "operate to disable those who have already embarked their funds in a corporate enterprise and given to it their personal attention, from assisting it in time of difficulty, except at the risk of doing so without security. A corporation might be in a sorry plight, indeed, if one who had already embarked his funds in it, and who, from the fact of his being one of its managers, is best acquainted with its needs and difficulties, should not be able to make a present advance of money to it to help it out of those difficulties. That it is necessary for the law to throw around such transactions the strongest safeguards in order to prevent fraud, need not be argued. Nor should it be forgotten that the right of directors of an insolvent corporation to take security

for past advances, thereby preferring themselves over other creditors, stands on quite a different footing. We, therefore, find the prevailing doctrine to be that the director of a corporation may advance money to it, may become its creditor, may take from it a mortgage or other security, and may enforce the same like any other creditor, but always subject to severe scrutiny, and under the obligation of acting in the utmost good faith": 3 Thompson on Corporations, § 4068. See, also, to the same effect, 2 Cook on Stock and Stockholders, § 661 and note; 1 Morawetz on Corporations, § 527; *Ten Eyck* v. *Pontiac, etc., Railroad Company*, 74 Mich. 226 (3 L. R. A. 378, 16 Am. St. Rep. 633, 41 N. W. 903, L. R. A. 378); *Jameson* v. *Coldwell*, 23 Or. 144 (31 Pac. 279); *Beach* v. *Miller*, 130 Ill. 162 (17 Am. St. Rep. 291 and note).

Now there is no pretence in this case that the transaction between Hale and the corporation was not open and fair and made in the utmost good faith at a duly called meeting of the board of directors, when all were present, with the knowledge and affirmative consent of every stockholder, director and officer of the corporation, and therefore, within the rule referred to the note and mortgage in question were valid and binding. It follows from these views that the decree of the court below must be reversed and the complaint dismissed, and it is so ordered.

REVERSED.

MR. JUSTICE WOLVERTON, having been of counsel, did not participate in this decision.