Argued 10 April, decided 28 May, rehearing denied 16 July, 1907.

## MARSTERS v. UMPQUA OIL CO.

90 Pac. 151.

CORPORATIONS—RIGHT TO QUESTION LEGALITY OF.

1. The legality of the organization and existence of a de facto corporation that has exercised corporate powers can be questioned only by the state, and cannot be questioned collaterally in a suit between private parties.

CORPORATIONS—LIMIT OF RIGHT OF CREDITOR TO QUESTION PROCEEDINGS BY DIRECTORS FOR THEIR OWN BENEFIT.

2. The rule of law which disqualifies a director from binding a corporation by a transaction in which he has an adverse interest is for the protection of the corporation and its stockholders, as are the provisions of law and the by-laws of the company relative to meetings of directors, quorums, etc., and they cannot be invoked by any one else, since such transactions are merely voidable, and not void. An attack by a creditor on proceedings by which the directors have profited must always be on the ground of fraud, and that only.

SAME—CASE UNDER CONSIDERATION.

3. In a suit to foreclose two mortgages against a corporation, a creditor who acquired a judgment lien on the mortgaged property subsequent to the recording of the mortgages was made a defendant. Plaintiff, as one of the directors of defendant corporation, had acted to make a quorum in authorizing the execution of the notes and mortgages which were duly executed by the president and secretary. One of the loans had been made from plaintiff, and the other from a bank which afterward assigned its interest to plaintiff. The defendant corporation made no repudiation of the transaction and did not answer, but the judgment creditor, in addition to a general denial, alleged that the defendant corporation was not duly organized, that the alleged president and secretary had no authority to bind it by the notes and mortgages, and that their acts were not authorized; but there was no averment or evidence that the obligations were not made in good faith to secure money actually loaned to the corporation and used by it in the prosecution of its enterprise. Held, that the validity of the obligations could not be questioned by the judgment creditor.

EVIDENCE—PRESUMPTIONS OF CONTINUANCE OF OWNERSHIP.

4. In a suit to foreclose a note and mortgage, where the mortgagor testified that the mortgage to plaintiff had never been paid or discharged, the presumption is that plaintiff continued to be the owner thereof.

PRINCIPAL AND SURETY—RIGHTS OF SURETY' AS TO PRINCIPAL—RIGHT
AFTER PAYMENT—REIMBURSEMENT AND SUBROGATION.

5. Where the plaintiff had been a surety on a note, but subsequently bought it, the assignment to him was not a discharge of the note, but entitled him to be subrogated to the rights of the creditor against his principal, and to foreclose a mortgage given to secure the note.

From Douglas: JAMES W. HAMILTON, Judge.

Statement by MR. CHIEF JUSTICE BEAN.

This is a suit by A. C. Marsters to foreclose two chattel mortgages alleged to have been executed by the Umpqua Valley Oil Co., which was organized as a corporation in 1901 in South Dakota, by filing articles of incorporation in the proper office, with a capital stock of $400,000, divided into 400,000 shares, of the par value of $1 each, for the purpose of owning and developing oil wells and coal mines in the states of Oregon and California. The articles, as filed, state that the corporation is formed by M. McCoy, H. L. Marsters, T. R. Sheridan and the plaintiff, residing at Roseburg, in this state, and S. H. Elrod and J. F. Way, residing at Clark, S. D., and that they shall constitute the first board of directors, and serve until their successors are elected and qualified, and that McCoy shall act as president, Elrod as vice-president, H. L. Marsters as secretary, and Sheridan as treasurer. No stock books seem to have been opened or stock regularly subscribed, but it is stated, after the signature of the incorporators to the articles of incorporation, that McCoy, Sheridan and the two Marsters each owned 100 shares, and Elrod and Way 10 shares each. On April 13, 1901, what purported to be a stockholders' meeting was held at Roseburg, in this state, at which there were present, either in person or by attorney in fact, all the persons named as incorporators, except Sheridan. The record of the meeting shows that McCoy, H. L. Marsters and the plaintiff each represented 100 shares of stock, and Elrod and Way 10 shares each, and that the several persons named as incorporators were elected directors, and by-laws were adopted defining the duties of the respective officers, and providing that three directors shall constitute a quorum. On the same day three of the directors so chosen convened and elected McCoy presi-

dent, Elrod vice-president, H. L. Marsters secretary, and T. R. Sheridan treasurer. The persons thus designated have ever since continued to act as directors and officers of the corporation, managing its business, disposing of its stock, making contracts on its behalf, and in general representing it in all its corporate transactions.

On September 27, 1902, McCoy, H. L. Marsters and plaintiff met as directors, pursuant to call of the president, and, among other things, adopted a resolution directing the president and secretary to borrow $500 for the company, and authorizing and empowering them to execute a promissory note therefor, secured by mortgage on its machinery and tools. In pursuance of this resolution, the president and secretary, on September 29, 1902, borrowed from plaintiff $500, executing the company's note secured by mortgage. On April 25, 1904, the president and secretary executed another promissory note of the company, with plaintiff as surety, to the Douglas County Bank, for $500, and a resolution was adopted at a meeting of the directors called by the president, McCoy, H. L. Marsters and the plaintiff being present, authorizing them to borrow $500, and to secure the same by chattel mortgage on the company's property. On July 16, 1904, a mortgage was accordingly given by the president and secretary to the bank to secure the payment of its note. This note and mortgage was thereafter assigned to the plaintiff, and this suit is brought by him to foreclose the two mortgages above referred to. John Marsh, who recovered a judgment against the defendant corporation in October, 1904, in an action brought by him on August 8 of that year to recover $240, for labor and services performed for the corporation between the 8th day of April and the 12th day of July, and who obtained an order for the sale of the mortgaged property which had been attached in such action, was made defendant. The corporation made default, but Marsh answered, denying the material allegations of the complaint, and for affirmative defenses pleading: (1) That the defendant corporation was not legally organized; (2) that the persons assuming to act as president and secretary had no

authority to bind it by the execution of the notes and mortgages in suit, and that their acts were not legally authorized. The plaintiff had a decree in the court below, and Marsh appeals.

AFFIRMED.

For appellant there was a brief over the name of *Fullerton & Orcutt,* with an oral argument by *Mr. James Corwin Fullerton.*

For respondent there was a brief over the names of *F. W. Benson* and *Crawford & Watson,* with an oral argument by *Mr. James Owen Watson.*

MR. CHIEF JUSTICE BEAN delivered the opinion.

1. The evidence shows, and it is undisputed, that the defendant corporation, at the time of the execution of the several notes and mortgages in controversy, was, and had been for a long time prior thereto, acting as a corporation in pursuance of articles regularly filed. It had a board of directors and other corporate officers, and was exercising the functions of a corporation. The legality of its organization cannot, therefore, be inquired into in this action. It was at least a *de facto* corporation, and the rightfulness of its existence can be questioned by the state only: 10 Cyc. 256; *Jones v. Hale,* 32 Or. 465 (52 Pac. 311: 8 Am. & Eng. Corp. Cas., N. S., 150, with note on the validity of a mortgage to a director).

2. It is claimed that the mortgages in suit are void because given by the corporation to and for the benefit of one of its directors, and that all the directors did not have notice of the meeting at which they were authorized, and that there was not a quorum present at such meeting, exclusive of the plaintiff, who was interested and could not act. These questions would be important, and deserve careful consideration, if urged by the corporation or a stockholder; but a subsequent lien creditor can attack the mortgages on the ground of fraud only. The rule of law which disqualifies a director from binding the corporation by a transaction in which he has an adverse interest is for the protection of the corporation and its stockholders, and the same is true of the provisions of law and the by-laws of the company

relative to the meeting of directors, quorums, etc. A director is an agent of the corporation. He cannot, therefore, at the same time act for himself and his principal without full knowledge and free assent of the principal, and, if he assumes to do so, his acts may be avoided by the corporation or its stockholders. Such transactions, however, are not absolutely void; they are only voidable at the instance of the corporation or a stockholder. A corporation or its stockholders may, like an individual, elect to confirm a transaction which could have been repudiated on the ground that the agent had an interest in the matter adverse to his principal, or that the meeting authorizing the transaction was not regularly called or held; and, if the transaction is acquiesced in by the corporation and its stockholders, it becomes as valid and binding as if regularly authorized. A creditor does not, in this respect, stand in the position of the corporation or a stockholder, and he is not entitled to exercise the rights of either. The directors or officers of the corporation are not his agents. Nor is the provision relative to the meeting of directors, quorum and the like, for his benefit. His right to question a transaction of this character, which has not been repudiated or disaffirmed by the corporation or a stockholder, depends upon its fraudulent character, and not whether it was regularly authorized in the first instance. If it was in fact fair and honest, and not intended to hinder, delay or defraud creditors, it cannot be attacked by him: 10 Cyc. 1195; 3 Clark & Marshall, Corporations, 2358; 5 Thompson, Corporations, § 6165; *O'Conner Min. & Mfg. Co.* v. *Coosa Furnace* Co. 95 Ala. 614 (10 South. 290: 36 Am. St. Rep. 251); *Campbell* v. *Argenta Gold & S. Min. Co.* (C. C.), 51 Fed. 1.

3. Now, in this case, the mortgages in question have not been repudiated or disaffirmed by the corporation or its stockholders. Their validity is admitted by the failure to answer, and there is neither averment in the pleading, nor evidence in the record, showing, or tending to show, that the notes and mortgages were not made in the utmost good faith to secure the payment of money actually loaned to the corporation and used by it in the

prosecution of its enterprise. They cannot, therefore, be questioned by a creditor who has acquired a lien upon the mortgaged property subsequent to their execution and recording.

4. It is also claimed that there is no proof that the note and mortgage executed by the corporation to the plaintiff has not been paid, or that the note and mortgage in favor of the Douglas County Bank has been assigned to him, or that he is now the owner of either of such mortgages. The secretary of the corporation testifies that the mortgage to the plaintiff has never been paid or discharged, and since it was made and delivered to him the presumption is that he continues to be the owner thereof. The president of the Douglas County Bank testified that the bank assigned and transferred the note and mortgage held by it to the plaintiff for and in consideration of the payment to it of the sum of $500.

5. A contention is also made that, because the plaintiff was surety on the note to the bank, the assignment of such note to him was, in effect, a payment and discharge thereof. The note on its face disclosed, and the evidence shows, that he was but a surety, and was therefore entitled, upon payment of the debt, to be subrogated to all the rights of the creditor as against his principal, and entitled to foreclose the mortgage given to secure the payment of such note.

Decree of the court below is affirmed.                    AFFIRMED.