Argued January 23; affirmed March 12, 1935

# DU BOIS-MATLACK LUMBER CO. *v.* HENRY D. DAVIS LUMBER CO. ET AL.

## (42 P. (2d) 152)

*Charles E. Wright,* of Portland (Thomas S. Wilson, of Portland, on the brief), for appellant.

*E. A. Boyrie,* of Portland (Wm. B. Layton, of Portland, on the brief), for receiver of Henry D. Davis Lumber Co.

RAND, J.  This is an appeal by the Union National Bank of Eau Claire, Wisconsin, from an order of the circuit court for Multnomah county, affirming the action of its receiver in the disallowance of a claim of the bank upon a promissory note for $11,000, payable to its order and purporting to be the note of the defendant, Henry D. Davis Lumber Company.

The note in question was executed in the name of the Henry D. Davis Lumber Company on February 1, 1932, by Henry D. Davis, its president, and P. H. Fortune, its vice-president, and was a second renewal of another note for the same amount which Davis as

president had executed in the name of the company and delivered to said bank. The proceeds of the note first executed were used by Davis in payment of a balance of $10,000 then due upon another promissory note for $30,000 which he had previously executed in the name of the company and delivered to the First Wisconsin National Bank of Milwaukee, the balance of $1,000 not so used having been by him applied to his own personal account. At the time the said notes were executed, Davis indorsed upon the back of each thereof his personal guarantee in the following words:

"For value received, I hereby guarantee the payment of the within note at maturity, or at any time thereafter, with interest, waiving demand, presentation, protest and notice of protest. Henry D. Davis."

It appears from the evidence offered upon the trial in the court below that the Henry D. Davis Lumber Company is an Oregon corporation and maintains its principal office and place of business in Portland, Oregon. It was organized for the purpose of engaging in the business of buying and selling lumber and is now insolvent. Ever since the organization of the Henry D. Davis Lumber Company in 1912, Davis has been its president and one of its principal stockholders. He is a resident of Eau Claire, Wisconsin, and has resided there for more than sixty years. He has been a depositor in the Union National Bank of Eau Claire ever since it was organized and during said time has borrowed large sums of money from that bank and never has been required to furnish any security for any of said loans.

Prior to the giving of the note for $30,000 to the First Wisconsin National Bank of Milwaukee, Davis had become interested in the Crooked River Lumber Company, another Oregon corporation, and that company had become indebted to the First National Bank

of Portland in the sum of $30,000. In order to meet said obligation and for the sole benefit of that company, Davis borrowed the sum of $30,000 from the First Wisconsin National Bank and executed the note above referred to in the name of the Henry D. Davis Lumber Company without any authorization therefor, or without the knowledge of any of its officers or directors, and applied the proceeds thereof in payment of the obligation owed by the Crooked River Lumber Company to the First National Bank of Portland, and Davis thereafter paid said note out of his own personal account with the exception of said balance of $10,000, and this balance, as stated, was paid from the proceeds of the loan secured from the Union National Bank.

It further appears from the testimony that the First Wisconsin National Bank is the correspondent bank of the Union National Bank of Eau Claire, Wisconsin, and that the $10,000 was remitted to the First Wisconsin National Bank by a draft drawn against its own proceeds in the hands of the Milwaukee bank and that the remaining $1,000 of the loan was paid by a cashier's check payable to the order of the Henry D. Davis Lumber Company and was indorsed in its name by Davis and deposited to his own credit in the Union National Bank and afterwards applied to his own personal use.

There is no evidence anywhere to be found in the record that the Henry D. Davis Lumber Company ever authorized the borrowing of any of said sums or the execution of any of said notes, or that said Company has ever ratified the borrowing of any of said sums or the execution of any of said notes. The evidence further shows that the Henry D. Davis Lumber Company had no interest whatever in the Crooked River Lumber Company and did not receive any part of the consideration for which said notes or any thereof were given.

■ Section 25-213, Oregon Code 1930, in defining the powers of the president and directors, provides that the directors "shall elect one of their number president, who shall preside at their meetings, and perform such other special duties as the directors may authorize * * * From the first meeting of the directors, the powers vested in the corporation are exercised by them, or by their officers or agents under their direction, except as otherwise specially provided in this chapter."

It is settled law in this state that, unless so provided in the by-laws or expressly authorized by the board of directors, the president of a domestic corporation has no inherent power to make, accept or indorse for the corporation any bill, note or bond which will be binding upon the company and, of course, the vice-president, who can only act as such in the absence of the president, can have no greater power. This principle was approved and followed in *Crawford v. Albany Ice Company*, 36 Or. 535 (60 P. 14), where this court said:

"* * * It is elementary law that the president and secretary of a corporation, as such, have no power to bind the corporation by the execution of promissory notes or other contracts, but such authority 'must be derived from some bylaw of the corporation, or some special order, or must be implied by some acquiescence or ratification on the part of the corporation, whose powers, under our law, are exercised by the directors.' "

In support of this holding, the court cited numerous authorities, among which was *Luse v. Isthmus Transit Ry Co.*, 6 Or. 125 (25 Am. Rep. 506), where the same principal had been previously announced. To the same effect see *Harding v. Oregon-Idaho Company*, 57 Or. 34 (110 P. 412); *Baines v. Coos Bay Nav. Co.*, 45 Or. 307 (77 P. 400); *Peek v. Skelley Lumber Co.*, 59 Or. 374 (117 P. 413); *Wilson v. Investment Co.*, 80 Or. 233 (156 P. 249); see also Daniel on Negotiable Instruments (6th

Ed.), sections 393, 394; Fletcher, Cyc. on Private Corporations (4th Ed.), sec. 1934. In *Baines v. Coos Bay Nav. Co.*, supra, the rule was further elucidated as follows:

"The rule is general that no managing agent of a corporation, except the cashier of a bank, possesses implied power to bind it by issuing, accepting, or indorsing on its behalf negotiable instruments: 10 Cyc. 929; [authorities cited]. This is so because such paper, in the hands of an innocent holder, is subject practically to no defense, and to protect corporations from the fraud of their agents, for through them alone can they act, the law requires that such an agent must possess express authority before he can bind his principal by putting in circulation negotiable instruments: Elwell v. Puget Sound & C. R. Co., 7 Wash. 487, 35 P. 376."

The court further said:

"The general manager of a corporation should not, except in cases of extreme necessity, be permitted to issue negotiable instruments without express authority, even to evidence bona fide debts contracted by it in the legitimate exercise of its business; for, if he were invested with implied power in all cases, he might, by issuing promissory notes, impose upon the corporation excessive burdens and prevent an inquiry by the stockholders into the reasonableness of the creditor's claim thus approved by him."

See also *Ramsey v. Wellington Co.,* 114 Or. 355 (235 P. 297), where the powers of the secretary to contract for the corporation were alone involved.

The by-laws of the Henry D. Davis Company, by sections 1 and 2 of Article III, provide that the president shall sign "all contracts and other instruments in writing which have been first approved by the Board of Directors", and "the vice-president in the absence of the President shall perform the duties assigned to the President", and by Article IV, the Board of Direc-

tors are given the power "to incur such indebtedness as they may deem necessary, and to authorize the execution by the President or Vice-President, and Secretary of any note and security for such indebtedness".

From these provisions of the statute and of the by-laws, it will be seen that neither of them conferred any authority upon Davis to execute these notes in the name of the company.

██ The bank, however, contends that the power to issue these notes was expressly conferred by a resolution adopted by the board of directors on September 30, 1921, which reads as follows:

"Be it Resolved by the Board of Directors of H. D. Davis Lbr. Co. that the President of said Co. is hereby authorized and empowered to make, execute, and deliver deeds conveying real estate belonging to said Company; to make, execute and deliver notes secured by mortgage covering any real estate owned by said Company, and to make, execute and deliver any and all kinds of agreements which shall be binding upon said Company."

That this resolution was not intended to confer upon Davis the power generally to issue negotiable paper but was intended to confer a temporary power only and which was to be exercised within a reasonable time and upon the conditions therein stated seems obvious from the language of the resolution. The power to execute notes secured by a mortgage upon property belonging to the company does not embrace, under any fair construction of the language of the resolution, the power to issue negotiable paper unlimited as to time and amount which are not secured by a mortgage upon the company property. But, regardless of whether or not that is the proper construction to place upon the resolution, the power conferred by the resolution is subject to the rule that, where a power is expressly conferred, it must

be strictly pursued, and that, where a power exists, it must be confined to the business of the agency and does not authorize the making of paper for the benefit of the agent or the making of accommodation paper. See 3 Tiffany on Agency, section 48, and authorities there cited.

Under the application of these rules, the issuance by Davis of any of the notes above referred to was wholly unauthorized.

The bank, however, contends that it is the bona fide holder of the note in question and that Davis had implied authority to execute it in the name of the company. The burden of proving such authority rested upon the bank and we can find no evidence in this case from which such an implied power can be inferred. The only evidence upon that question was the testimony of Mr. George B. Wheeler, the president of the bank, contained in his deposition. He says he obtained his information from a limited acquaintance with Davis and from financial statements received from the Henry D. Davis Lumber Company. Whether such statements were furnished by Davis himself, he does not state. He says: "I knew that he was president of the lumber company and believed from his own statement that he had such authority." He also states that on March 25, 1920, two ninety-day notes—one for $20,000 and one for $5,000—"payable to the Union National Bank", were "executed by the Henry D. Davis Lumber Company by Henry D. Davis as president and another officer of the lumber company, and both such notes were indorsed by Mr. Davis personally". These notes were subsequently paid by the company. After having made these statements, he was asked: "Upon what other facts, if any, did you rely in extending credit to the said Lumber company upon the promissory note dated February 1,

1932?'' and he answered: ''Primarily upon the annual. financial statement of the company which we were furnished, strengthened by the personal indorsement of Mr. Davis.''

This evidence was not sufficient to establish a continued course of dealing upon the part of the Henry D. Davis Lumber Company. Nor does it show any action or conduct upon the part of Davis of which the company must have or should have known sufficient to show an implied authority upon the part of Davis to execute any negotiable paper in the name of the company. On the contrary the evidence indicates that the bank was not relying upon the credit of the corporation but was relying upon the personal credit of Henry D. Davis alone. He, as stated, had been a depositor and customer of that bank ever since its organization and there is some proof tending to show that during the time of its existence he had secured 110 different loans for varying amounts from the bank on his own personal credit for which he gave no security at the time and all of which, up to the time of the giving of the note in question at least, had been paid by him.

██ Again, the bank was charged with notice that the president of a corporation has no inherent power to execute negotiable paper in its name and, when this application for the loan was made by Davis, the bank knew or should have known that it was not customary for both the president and the vice-president of a corporation to sign the name of the company in issuing negotiable paper. Nor does the evidence show that the two notes taken by the bank in March, 1920, which Mr. Wheeler said were signed by Davis and another officer of the company, were not signed by the secretary and were not authorized by the board of directors. It was the duty of the bank, in making this loan if it intended

to rely upon the credit of the company, to ascertain what authority, if any, the president or the vice-president had to act for the company and it had no right to rely upon the mere statement of the president alone as to his authority. As said in *Ramsey v. Wellington Co.*, supra:

"The declarations of an agent as to the fact or extent of his authority are not competent to prove his agency [citing authorities]. This principle, however, does not disqualify the agent to testify as a witness in proper cases as to the existence and terms of his agency."

The rule applies as to the declaration made to the party from whom the loan was obtained and not to the competency of the agent when called as a witness to prove the agency.

For these reasons, we are compelled to hold that Davis had no authority to execute any of the notes to which we have referred and that, since none of these transactions were ever ratified by the company and none of the proceeds received from them were ever received by the company, the order appealed from must be affirmed.

CAMPBELL, C. J., and BEAN and BAILEY, JJ., concur.