Argued May 12, affirmed as modified July 6, 1960

# STEIN *v.* GABLE PARK, INC., AND LEPPALUOTO ET AL

353 P. 2d 1034

Glen Hieber, Judge.

*Alex L. Parks*, Portland, argued the cause for intervenors-appellants. With him on the briefs were Dusenbery, Martin, Schwab, Beatty & Parks and David P. Templeton, Portland.

*Carl M. Little*, Portland, argued the cause and filed a brief for respondent.

Before McAllister, Chief Justice, and Warner, Sloan, O'Connell and Millard, Justices.

MILLARD, J. (Pro Tempore)

This is an appeal from a decree of foreclosure and order of sale rendered in the circuit court of Washington county in a suit wherein the plaintiff was seeking foreclosure of a corporate mortgage for $13,000, dated April, 1947, but delivered to plaintiff on or about March 4, 1954, allegedly securing a note for the same amount dated April, 1947. The note did not purport to allow any interest. However, plaintiff claims that after the note was delivered a subsequent oral agreement was made as hereinafter related which permitted her to charge interest at 10% per annum, and the decree of foreclosure allowed interest to her at that rate. The mortgagee, Gable Park, Inc., was a party and was served with summons but did not offer a defense. However, A. Leppaluoto and Charles Grace intervened as stockholders of defendant corporation by permission of the court and defended against the foreclosure, claiming that plaintiff's mortgage was a spurious lien, invalid because of fraud. In this respect they claim the note and mortgage were without consideration and were spurious devices concocted by the officers of the corporation, which included plaintiff.

Although some contention is made by plaintiff to the effect that the intervenors have not properly alleged fraud in their answer, we shall, for the purposes of this decision, assume that their answer is sufficient to raise such issue.

Gable Park, Inc., was organized in 1946 to acquire unimproved real estate and to construct and sell new homes. Plaintiff, who was an aged woman of limited business experience, was the largest subscriber, having received 50 shares of stock for the $5,000 she invested. She became chairman of the board of directors. The largest additional participant was Bernard Asheim,

who received 29 shares issued for $2,900. His wife, Annabelle Asheim, received one share issued at $100. The other two subscribers were plaintiff's daughter and son-in-law who between them held 20 shares. Bernard Asheim appears to have been the original organizer who induced plaintiff to invest, and he became president of the corporation. Its business was carried on with the consent of the others almost exclusively by him. He was subsequently issued 100 shares for services rendered and thus with his wife Annabelle held 130 of the 200 shares of Gable Park, Inc.

Pursuant to a written agreement and at the instigation of Asheim, in April, 1947, the plaintiff deposited $13,000 with the Gable Park corporation. With this deposit the seeds of the present foreclosure suit were first sown. Pursuant to such agreement between Asheim, the plaintiff, George Grace, a brother of one of the intervenors, and the corporation, the money was not to be used for corporate business, but instead for a joint venture known as the Hall Project. This project consisted of 11 parcels of real property in various stages of development taken over from a builder named Hall. This property was conveyed to Gable Park, Inc., which used Mrs. Stein's $13,000 for payment of materials, labor and other expenses in the completion of the houses on the Hall Project. In return, Mrs. Stein took the corporation's demand note without interest for the sum of $13,000, plus the promise of her coadventurers that she would receive 30% of the profits from the project in which her money was to be invested. The project was quite successfully completed in October, 1947, with Mrs. Stein receiving about $3,000 as her portion of the profits. The corporation itself did not receive any profit from

the venture but merely served as a conduit through which the transaction had passed, a convenient temporary custodian for the property, it being contemplated that the apparent ownership would result in establishment of credit for the corporation.

After the success of the Hall Project and at the instigation of Asheim, Mrs. Stein agreed with him and all the other stockholders and corporate officers, of which plaintiff was one, that rather than withdraw her investment she would permit it to remain in the corporation indefinitely for the promised payment of 10% interest payable semiannually. Plaintiff retained the note as evidence of the debt and the money remained with the corporation where it was used for development of the corporate properties. Initially this arrangement was visited with the same success that had greeted the Hall Project. From 1948 through 1952 Mrs. Stein received two interest payments per year of $650 each from the corporation. Several payments were received after 1952 so that in toto she had received interest of $8,450 for having let the $13,000 ride, this aggregate amount having been paid prior to the institution of this suit. Plaintiff alleged and it appears that the interest from April 18, 1954, to the date of the complaint, which was August 29, 1956, is unpaid, as well as the principal sum of $13,000, for both of which plaintiff has made demand.

In 1952 a suit was commenced against both Asheim and Gable Park, Inc., by one Edna Mae Caveny, who was a purchaser of one of the corporate properties. See *Caveny v. Asheim et al.*, 202 Or 195, 274 P2d 281. While it was pending it jeopardized the assets of the Gable Park corporation. Mrs. Stein became concerned over the corporation's indebtedness to her and requested additional security. The best the corporation

could produce was a second mortgage on some of the real property of the corporation. This property was already encumbered by an outstanding first mortgage for $13,400 due the Travelers Insurance Company. According to Mr. Asheim, the Stein second mortgage was prepared in January, 1954, and was authorized by the stockholders and directors. While the instrument was dated April, 1947, it was acknowledged on February 16, 1954, and recorded on March 5, 1954, and is the mortgage in dispute. On its face it was given to secure the previously mentioned noninterest-bearing demand note given Mrs. Stein in April, 1947, on the Hall Project. However, in her complaint Mrs. Stein alleges a corporate indebtedness to her of $13,000 together with interest thereon at the rate of 10% per annum from April 18, 1954, apparently proceeding on the theory that the mortgage was given to secure the interest-bearing indebtedness created orally when she let the $13,000 ride after the Hall Project.

■ At or about the time plaintiff acquired this mortgage, Mr. Asheim negotiated a loan with intervenor Leppaluoto in a substantial amount. In addition to other security for this loan Asheim pledged 76 shares of his capital stock in Gable Park, Inc., to the intervenor, who became the owner of this stock prior to the institution of this proceeding. In 1951 another of Mr. Asheim's ventures, the Robinson Realty Company, in which he was one of two partners, fell into debt. To secure the Robinson Realty debt Asheim pledged 53 of his 129 shares in Gable Park, Inc., to that creditor, intervenor Charles Grace. We, therefore, conclude that intervenors had sufficient interest to protect, justifying their appearance in this suit.

■ We now come to a consideration of the question of fraud. It clearly appears that originally plaintiff

did invest $13,000. It further appears that the note originally executed by the corporation was for the benefit of plaintiff and her coadventurer and that the corporation did not incur any direct benefit therefrom. Hence, at that point the note was without any consideration as far as the corporation was concerned. Upon completion of the Hall transaction at a profit, plaintiff was, however, entitled to her principal. At this point she was induced and requested to leave her principal with the corporation for its use upon its promise to pay interest on the note at 10% per annum payable semiannually, the stockholders agreeing. By so doing, it may reasonably be implied that the corporation promised to pay her note and thus the note became evidence of the debt. See 12 Am Jur 765, Contracts § 239; 1 Restatement of the Law 7, Contracts § 5. Since plaintiff was allowed to retain the note it is evident that the parties not only had in mind the payment of interest but also the payment of the note.

■■■ Intervenors contend that the mortgage was invalid for the reason that it was made in fraud of creditors and stockholders of the corporation and in violation of plaintiff's fiduciary duties as an officer. We find no evidence of fraud against the plaintiff. In view of the situation of the corporation as respects the Caveny transaction, it would appear that plaintiff was justifiably concerned about the absence of security for the payment of her note. While equity will scrutinize loans made by an officer to a corporation which he represents, such loans will be upheld if they are fair, open and made in utmost good faith. *Jones v. Hale*, 32 Or 465, 470, 471, 472, 473, 52 P 311. We find no evidence of fraud or collusion here. It did appear that the records of the corporate enterprises were haphazardly kept, due more or less to the fact that Asheim

was left to handle the details of the corporate enterprise without supervision. From the evidence, however, we are able to determine the course of his financial operations for his principal. Under these circumstances we cannot say that there is any presumption of fraud arising through concealment as was present in *Wool Growers Service Corporation v. Ragan*, 18 Wash2d 655, 140 P2d 512, 530, cited by intervenors.

■■ Intervenors next contend that plaintiff's rights are governed by the written provisions of the mortgage and note which expressly provide that no interest should be paid and such rights cannot be varied by the alleged prior oral agreement to pay interest on the note at the rate of 10% per annum. Intervenors are correct insofar as the enforcement of the mortgage is concerned. Plaintiff has not sought here to reform the mortgage so as to include interest. In *Willamette Prod. Credit Ass'n v. Day*, 167 Or 451, 458, 118 P2d 1058, it was held that as between the parties where the instrument is complete and not ambiguous, the verbal negotiations preceding or accompanying the execution of the mortgage are merged in the writing. See cases there cited. In *Taylor et ux. v. Wells et ux.*, 188 Or 648, 659, 660, 217 P2d 236, it was held that such evidence should be disregarded by the trial court in granting relief based upon the instrument. This is on the theory that to hold otherwise would allow a variance or construction of a written agreement complete on its face. We hold that the court erred in including interest as a part of the debt secured by the mortgage. To hold otherwise would result in reformation of the instrument when that is not sought here.

■■ It does not follow, however, that the agreement to pay interest did not result in an enforceable

contract. Unless prohibited by positive law, a written agreement may be modified, changed or annulled by a subsequent valid agreement of the parties. *City Messenger Co. v. Postal Tel. Co.*, 74 Or 433, 440, 441, 145 P 657; *Knight v. Potter*, 147 Or 339, 342, 32 P2d 1044; *Craswell v. Biggs*, 160 Or 547, 560, 86 P2d 71; *Kontz v. B. P. Johns Furniture Corp.*, 167 Or 187, 205, 115 P2d 319. And "where a part of the transaction has been embodied in a single writing but another part has been left in some other form, the rule against disputing the terms of the document will be applicable to so much of the transaction as is embodied, but not to the remainder." *City Messenger Co. v. Postal Tel. Co.*, supra, at p 440.

Since plaintiff at the conclusion of the Hall transaction was not required to leave her money with the corporation and since she was induced to allow it to remain for corporate use on the promise of the corporation to pay interest, we hold that such promise is enforceable. Since this issue is also tendered by the complaint and established by the evidence in plaintiff's favor, we hold that the trial court should have entered a judgment in favor of plaintiff and against Gable Park, Inc., for interest on $13,000 at the rate of 10% per annum from the 18th day of April, 1954, until the date of the decree, which was July 28, 1958, said judgment to be embodied in a portion of the decree separate and apart from provisions relating to foreclosure and sale under the mortgage.

 Intervenors further contend that the court is in error in not allowing intervenor Leppaluoto to be subrogated to the first mortgage held by the Travelers Insurance Company on the property covered by plaintiff's mortgage. It did appear in evidence that a portion of the money advanced by this intervenor by way

of loan to Asheim was used by the borrower as a payment on the insurance company mortgage. If this question was before the court it would present a serious problem. See Osborne on Mortgages 794, § 282; 50 Am Jur 1063, Suretyship § 239, note 17; 21 Columbia Law Rev 470. This question, however, is not an issue here since intervenors did not allege the facts relating to the claim of subrogation in their answer, nor does it appear in the other pleadings. A litigant who claims the right to subrogation must plead the facts upon which the claim is based. *Cooper v. Sagert*, 111 Or 27, 34, 223 P 943; 5 Bancroft's Code Pleading 4262, § 2346; 2 Bancroft's Code Pleading, Practice and Remedies, (10-year supp) 1160, § 2346. We hold, therefore, that any right of subrogation that intervenors may have was not, nor could it have been, litigated in this proceeding.

It follows that subject to the modification hereinabove expressed, the decree and order of sale of the circuit court must be affirmed.