# BANK OF OREGON,
*Appellant,*

*v.*

# HIWAY PRODUCTS, INC., et al
*Respondents,*

# ONION,
*Intervenor and Cross-Complainant-Respondent.*

## (No. 77-4-77, CA 10328)

598 P2d 318

Ridgway K. Foley, Jr., Portland, argued the cause for appellant. With him on the briefs were Souther, Spaulding, Kinsey, Williamson & Schwabe, Roy D. Lambert, and L. Edward Robbins, Portland.

Tony Pizzuti, Canby, argued the cause for respondent Hiway Products, Inc. On the brief was Clifford L. Freeman, Portland.

No appearance for respondent Canby Union Bank, an Oregon corporation.

Sid Brockley, Oregon City, argued the cause for intervenor and cross-complainant-respondent. With him on the brief was Emil R. Berg, Oregon City.

Before Schwab, Chief Judge, and Thornton, Lee and Gillette, Judges.

THORNTON, J.

## THORNTON, J.

Plaintiff appeals from the trial court's decision that plaintiff did not have a mortgage on the property in issue. The purported mortgage, a second mortgage on property of defendant Hiway Products, Inc. (Hiway), was given to secure the personal guaranty given by Carl Braman, stockholder in and onetime president of Hiway, for debts of another corporation, Ordeco, Inc. (Ordeco).

Plaintiff's main contention is that the trial court erred in determining that Mr. Braman lacked authority to execute the mortgage on behalf of Hiway. Plaintiff contends that even if Mr. Braman lacked such authority, Hiway is estopped from asserting that lack.

Hiway was formed in 1950. It was first a concrete business and later a manufacturer of various items. It has been inactive since 1971, carrying on no regular business, shareholder meetings, or board meetings. Its sole asset is the real property (consisting of building and land) which was the subject of the second mortgage.

At the time the second mortgage was executed, Mr. Braman and his wife jointly owned approximately 57 percent of the shares of Hiway, and Mr. Glenn Onion, intervenor, owned approximately 43 percent of the shares. At that time, Mr. Braman was president and Mr. Onion was secretary of Hiway, and they were the only directors.

Mr. Braman managed Hiway for most of the life of the corporation. Mr. Onion willingly acquiesced in Mr. Braman's handling the day-to-day business operations before Hiway became inactive, and in the making of mortgage payments, paying taxes and entering lease agreements once Hiway became inactive. Mr. Onion, called as a witness by plaintiff, testified that while Mr. Braman always contacted third parties when necessary for corporate business, Mr. Braman always told

[225]

Mr. Onion about legal matters. Mr. Braman testified that he always consulted with Mr. Onion when Mr. Onion was needed to sign something for the corporation. Mr. Onion had been involved in negotiations in obtaining the first mortgage on the property in 1968.

Ordeco occupied space in Hiway's building for between one and two years prior to the execution of the second mortgage. Ordeco made improvements with a book value of $18,000 on the building, but, unable to pay its overhead, it moved out in the summer of 1974, having paid little of the rent then due. Mr. Onion was informed that Ordeco was renting the property, but apparently was not involved in any rental negotiations. Mr. Onion assumed, without verifying, that Mr. Braman was depositing the rental income in the bank.

Mr. Braman was a shareholder of Ordeco, had personally loaned money to Ordeco, and had guaranteed its debts in varying amounts. On November 26, 1974, Mr. Braman signed a personal guaranty of $50,000 and a second mortgage on Hiway's property for that amount as consideration for plaintiff's release of Mr. Braman from a $110,000 personal guaranty. Mr. Braman signed the second mortgage as president and secretary of Hiway.

In 1976, plaintiff sued Mr. Braman on his guaranty and obtained a judgment for $50,000. Execution was returned unsatisfied, and plaintiff brought this suit to foreclose the second mortgage on Hiway's property in April, 1977. Hiway's first answer was a general denial. Plaintiff's motion for summary judgment was denied in May, 1977, and, in September, 1977, Hiway filed an amended answer raising as one of several affirmative defenses Mr. Braman's lack of authority to enter into the second mortgage on behalf of the corporation. Mr. Onion filed his complaint in intervention on November 3, 1977, asserting Mr. Braman's lack of authority to execute the mortage.

Plaintiff argues that Mr. Onion's acquiescence, throughout the life of the corporation, in Mr. Braman's

acting as general manager gave rise to implied authority in Mr. Braman to grant the mortgage on behalf of the corporation. Plaintiff also claims that the court erred in determining that Mr. Braman had no apparent authority to mortgage the Hiway property.

Assuming, without deciding, that Mr. Braman had either implied or apparent authority, or both, to execute the second mortgage on behalf of Hiway, this is not determinative here for this reason:

> "Apparent authority and its effect vanish * * in the presence of the actual knowledge of the third party as to the real scope of the agent's authority, or when the former has knowledge of facts which would put him upon inquiry as to the actual warrant of the agent." *Portland v. American Surety Co.,* 79 Or 38, 43-44, 153 P 786, 154 P 121 (1916).

*See Barbour et al. v. Johnston et al.,* 201 Or 375, 269 P2d 531, 270 P2d 673 (1954); *but see Musulin v. Woodtek, Inc.,* 260 Or 576, 491 P2d 1173 (1971) (notice of lack of inherent authority important only where apparent authority not established). A similar rule applies to implied authority. *See DuBois-Matlack Co. v. Davis Lbr. Co.,* 149 Or 571, 42 P2d 152 (1935).

Here, several things should have given Mr. Severson, plaintiff's executive vice president who negotiated the mortgage, pause before he relied upon Mr. Braman's mortgaging of Hiway's property. Mr. Severson testified that he told Mr. Braman that there should be a meeting with the stockholders and directors, for discussion of the mortgage needed to be recorded in the corporate minutes, although he also assumed, from Mr. Braman's reputation and representations, that Mr. Braman could do with Hiway property what he pleased. However, Mr. Severson did not recall having seen the corporate minutes provided by Mr. Braman (admittedly "reporting" a meeting which never took place), and did not rely on them. Mr. Severson had drawn up a resolution, on which he had listed Mr. Braman as both president and secretary of Hiway, based upon Mr. Braman's representations. Mr. Sever-

[227]

son claimed that he had made loans to Oregon corporations where a single person was both secretary and president. At the time of the transaction, Mr. Severson was unaware that the secretary and the president of a corporation must be two different people. ORS 57.236(1). Finally, the mortgage was given by the corporation to reduce and secure the personal obligation of one of its shareholders, for debts owed not by the corporation but by a third party. We find that Mr. Severson not only should have been but was aware that more than just Mr. Braman's representations and signature should be obtained before a mortgage was granted under such circumstances.

■ Plaintiff argues that even if Hiway did not authorize Mr. Braman to grant the mortgage, Hiway ratified the transaction by its knowing acquiescence in and receipt of benefits from the mortgage. *See, e.g., Kittleson v. Tennant Agency,* 242 Or 610, 411 P2d 94 (1966). A principal who negligently fails to investigate cannot assert lack of knowledge; in such a case, the receipt of benefits suffices as ratification by estoppel. H. Reuschlein & W. Gregory, Agency and Partnership § 37 (1979).

■ Here, not only did Mr. Onion, the other corporate officer and director, not know of the transaction, but there was no way he would know, without having some reason to speak to Mr. Braman about the transaction. It is unclear how Mr. Onion found out about the mortgage. Although there are corporate "minutes" in which Mr. Braman reports a purported meeting with Mr. Onion at which the mortgage was discussed and approved, there is no indication as in *Currie v. Bowman,* 25 Or 364, 35 P 848 (1894), that the minutes were ever in the minute book where Mr. Onion could have found them; the only copy in evidence was affixed to the corporate resolution purporting to authorize the mortgage, and given to the bank.

Furthermore, while it is true that the loan agreement might have been successful in helping Ordeco to

become profitable, and hence eventually to pay the delinquent rent owed to Hiway, that is an incidental and rather speculative benefit to Hiway (and Mr. Onion). The main and immediate beneficiaries were the bank, which obtained security for a personal guarantee of debt owed to it, and Mr. Braman, who was released from a $110,000 personal guaranty of Ordeco's debts in return for the $50,000 guaranty secured by the mortgage. *Cf., Kittleson v. Tennant Agency, supra,* in which ratification was found when the money received in the unauthorized transaction was used for corporate purposes, and the corporation, having knowledge of the transaction, failed to either reimburse the plaintiff or bring legal proceedings to nullify the transaction.

■ As to the plaintiff's assertion that Hiway is estopped from asserting Mr. Braman's lack of authority:

> "The doctrine of estoppel is only intended to protect those who materially change their position in reliance upon another's acts or representations. Estoppel may be established only where there was a right of reliance upon the act of the party sought to be estopped, and such reliance was reasonable." *Bash v. Fir Grove Cemeteries Co.,* 282 Or 677, 687, 581 P2d 75 (1978). (Citations omitted.)

Here, as noted above, plaintiff had reason to inquire concerning Mr. Braman's authority to execute a mortgage for the corporation and therefore was not entitled to rely on his signature alone. Hence, plaintiff may not claim estoppel.

■ Plaintiff also assigns as error the trial court's order allowing Mr. Onion to intervene, noting that generally a shareholder is not entitled to intervene in litigation involving a corporation absent a "showing [of] the existence of a defense which the corporation neglects and refuses to make." 7 Fletcher, Cyclopedia Corporations § 3257 (1978 rev ed). This is because

> "[t]he stockholder, having no estate, legal or equitable, in the corporate property, has no *locus standi* in the courts while the corporation, in which

[229]

alone are vested the corporate property and franchises, is able and willing to sue for their protection." 4 Pomeroy's Equity Jurisprudence, § 1094 (5th ed 1941).

Intervenor counters that ORS 13.130 provides for broad rights of intervention. That statute reads, in pertinent part:

"At any time before trial any person who has an interest in the matter in litigation may, by leave of court, intervene. * * *"

Prior to the enactment of the statute, 1921 Or Laws ch 408, § 1, equity limited participation by stockholders in litigation on behalf of corporations. *See Baillie v. Columbia Gold Min. Co.,* 86 Or 1, 166 P 965, 167 P 1167 (1917); *Wills v. Nehalem Coal Co.,* 52 Or 70, 87-88, 96 P 528 (1908). The statute was apparently intended merely to separate those times when it is mandatory for the trial court to entertain a motion for intervention, from those when it is discretionary. *See Barendrecht v. Clark,* 244 Or 524, 419 P2d 603 (1966). *Stein v. Gable Park, Inc.,* 223 Or 17, 353 P2d 1034 (1960), held that owners of shares had sufficient interest in the corporation to intervene in a foreclosure action against the corporation, but in that case the corporation failed to appear. It is not clear, and we decline to hold, that by enactment of ORS 13.130 nonstatutory limitations on shareholder intervention were eliminated.

Intervenor argues that he was correctly permitted to intervene in this case, for in a pending shareholder's derivative suit he would be collaterally estopped by determinations in the current suit. Assuming that is true, it is of moment only if it is apparent that the corporation will not adequately defend the foreclosure suit. Such unwillingness or inability to defend was not pled or otherwise demonstrated here.

The trial court should not, therefore, have allowed Mr. Onion to intervene. As already noted, Onion was called as a witness by plaintiff and did testify. As

resulting prejudice to plaintiff is not apparent, aside from the award to Mr. Onion of $57.40 in costs, the error does not constitute grounds for reversal. The decree is modified to remove the provision for costs to Mr. Onion.

■  Finally, plaintiff assigns as error the award of attorney fees in a supplemental decree entered after plaintiff's notice of appeal to this court had been filed. The trial court, in its original decree, explicitly left for later determination the issue of attorney fees to be awarded to Hiway.

ORS 19.033(1) provides, in pertinent part:

"When the notice of appeal has been served and filed * * * , the Supreme Court or the Court of Appeals shall have jurisdiction of the cause, * * * but the trial court shall have such powers in connection with the appeal as are conferred upon it by law."

Here, the action of the trial court was not within the limited range of matters relating to appeal listed in *Gordon Creek Tree Farms v. Layne, et al,* 230 Or 204, 209, 358 P2d 1062, 368 P2d 737 (1961). *See also Valley Pipe Co. v. City of Albany,* 215 Or 666, 300 P2d 411, 303 P2d 503 (1959). Instead, the trial court amended its prior decree.

"As far as we are presently advised, this court has not yet recognized a right in the circuit court to change any part of its record after this court has acquired appellate jurisdiction in a given matter, except for the express purpose of making its record speak the truth as to matters and things transpiring prior to the entry of its original judgment or decree. * * *." *Caveny v. Asheim et al.,* 202 Or 195, 210, 274 P2d 281 (1954).

The court in *Caveny* then held void an amended decree, which was amended not to correct the court's record to conform to the truth but to award relief which, as a matter of law, should not otherwise

[231]

have been awarded. We assume, without deciding, that the supplemental decree in the present case was otherwise correct. It must, however, be reversed as beyond the trial court's jurisdiction with respect to awarding attorney fees once a notice of appeal was filed. *State v. Steffes,* 2 Or App 163, 465 P2d 905, *rev den* (1970), is not to the contrary. There, we upheld the trial court's allowance of habitual criminal proceedings while an appeal was pending, because a statute required the district attorney to institute such proceedings promptly. There is no similar statute concerning an independent determination of attorney fees.

■ Hiway asks that, if the award of attorney fees by supplemental decree is found invalid, this court award such fees pursuant to its powers on review. This court's powers on review do not extend to making an award of attorney fees for trial court proceedings.

Modified and affirmed in part, reversed in part.